## W. W. BOYER & CO. *vs.* ROBERT COXEN.

*Liability of Master in Punitive Damages for Wanton Injury Caused by Servant—Sufficiency of Evidence.*

A master is liable in punitive damages for a wanton injury inflicted by his servant when acting within the scope of his employment, although the master did not expressly authorize the act or subsequently approve it.

Plaintiff sold a wagon load of peas to defendants' buyer who directed him to take it to defendants' packing-house. Defendants' foreman in charge of the place refused to allow the peas to be unloaded, and ordered plaintiff to take his wagon away. Plaintiff asked that the buyer be communicated with as he had examined and accepted the peas and refused to move away. The foreman then struck plaintiff several times with a monkey-wrench, breaking his nose and causing other injuries. *Held,* that this evidence on the part of the plaintiff was legally sufficient to justify an instruction to the jury that if they found that the foreman was acting in the discharge of his duties at the time of making the assault on the plaintiff and that the assault was made wantonly and with reckless violence, then the jury might, in their discretion, allow to the plaintiff punitive or exemplary damages.

Appeal from the Superior Court of Baltimore City, (HARLAN, C. J.) The jury returned a verdict for plaintiff for $2,000. The Court ordered a new trial to be granted, unless plaintiff remitted $1,000, which was ageeed to, and judgment entered for $1,000.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD and SCHMUCKER, JJ.

*Leigh Bonsal* (with whom was *Edgar G. Miller, Jr.*, on the brief), for the appellants.

*Edward I. Clark* (with whom was *Jos. A. Clark* and *H. S. Gardiner* on the brief), for the appellee.

BOYD, J., delivered the opinion of the Court.

The question presented by this record for our consideration is whether there was any evidence legally sufficient to justify an instruction given the jury as to punitive or exemplary damages. After referring to compensatory damages, the prayer concluded as follows: "And if they find that the act of the defendants' servant was wanton and attended with reckless violence, they also in their discretion may allow punitive or exemplary damages." That was specially excepted to by the defendants, but was granted by the Court. It was argued by the appellants that no damages could be allowed, because they were not liable at all for the acts of their servant which caused the injuries complained of, as he was not in the discharge of the duties for which he was employed when he made the alleged assault on the appellee, but that question was submitted to the jury by the first prayer of the plaintiff and the second and third of the defendants, and it was determined against the defendants. There was no prayer offered by the defendants as to the legal sufficiency of the evidence on that point and no special exception was taken on that ground to the prayer of the plaintiff. We must therefore assume that there was such evidence as to authorize its submission to the jury, and it is not before us for review.

Some Courts of high authority have adopted the rule that a principal is only liable in punitive damages for the act of his agent when the former has either given express authority to the agent or subsequently ratified his act, or was guilty of some misconduct himself in connection with it. When it is remembered that such damages are allowed by way of pun-

ishment to the offender and as a warning to others, the doctrine sanctioned by those Courts cannot be said to be wholly without foundation to base it upon, for it is at least unusual to *punish* one person for the act of another, unless the former did either authorize or ratify it or take some part himself in what is complained of. But there are a number of instances in which the principal may be even criminally liable for the acts of his agent, for some of which see 1 *Ency. of Law* (2 ed.), 1161, n. 2, and in this State we have not followed the doctrine held by the Courts above referred to in civil suits. Although the rule adopted here may in some cases result in hardship to the principal, yet, if carefully applied, there is less danger of injustice in enforcing it, in proper cases, than in denying it in all cases unless the principal has actually participated in the wrong done by his agent or servant or authorized or ratified it. *Any* liability of the master for a tort of his servant is dependent upon the fact that the servant was acting at the time in the course of his master's service, and for his benefit, within the scope of his employment. The master selects him for that service and knows, or ought to know, what sort of a person he is investing with authority to act for him. The servant is acting for his master when the wrong is done—it is in contemplation of law the act of the master. In a great many cases, a judgment against the servant would be of no value to the injured one and no punishment to the wrong-doer, as it could not be collected. Every character of business, of any considerable proportions, is for the most part conducted through agents and servants, and if the principal or master cannot be held responsible in punitive damages, it would in many, perhaps in most actions of torts, be equivalent to abolishing that character of damages, if he is to be relieved by reason of the fact that the act complained of was done by the servant, and not by him individually. This Court has therefore followed the rule that the master is not exempted from the liability for such damages merely because the act complained of was done by a servant, and not by the master himself, and in many cases exemplary damages have been allowed against the master

for acts done by the servant, without express authority from the former or ratification by him having been shown.

In this case the jury was required to find that the agent, McKewen, was acting in the discharge of his duty for which he was employed, when he made the assault complained of, before it could render a verdict for the plaintiff, and, having so found, his principal was responsible in punitive damages, provided the facts were such as would have warranted that kind of damages, if the agent was being sued. It therefore becomes necessary to see what the record discloses with reference to the character of the assault alleged to have been made on the plaintiff, and, in passing on this prayer, we must accept the testimony offered by the plaintiff as true. Coxen went to market with a load of peas which a commission merchant, named Koppelman, examined and accepted. He directed Coxen to take them to the packing-house of the defendants. After waiting there for two or three hours for his turn to deliver the peas, he gave a ticket which he had received from Koppelman to a measurer, who gave it to McKewen, and commenced to unload the peas. He emptied a sack of them on the floor, and, after looking at them, said to the plaintiff: " We won't have those peas ; you will have to go back to the market." The plaintiff replied that the buyer at the market had examined them thoroughly, and the measurer then referred him to the foreman, McKewen, who refused to take them. Coxen then asked him to call up the buyer, said he had been waiting there all morning, and he was not going back until the buyer was called. McKewen ordered him to move on and went to his horse's head, and Coxen went on the other side and told him not to move the horse. McKewen said he would have him arrested, walked out to West Falls avenue, as if he was looking for an officer, and went back to the packing-house and came out with a monkey-wrench in his hand. According to the testimony of the plaintiff, McKewen struck him over the head with the monkey-wrench, which was eighteen inches long, and some of the witnesses said McKewen struck him over the head several times and other parties took

hold of him.   Coxen's nose was broken, he bled very pro-
fusely and was quite seriously injured.   McKewen testified
that he did not strike Coxen until after he had struck him ;
that he started to move the horse in order to clear the way
for other teams when Coxen struck him, and then he got the
monkey-wrench, and there was some testimony to corroborate
him in those statements.   But, if the testimony of the plaintiff
and his witnesses be true, McKewen made the first assault,
and did so in such manner as unquestionably authorized the
jury to award exemplary damages.   Although Coxen was
not free from blame, it was not a wholly unreasonable demand
that he made, to have McKewen call up Koppelman, who had
purchased the peas for the defendants, after inspecting them.
But, according to Coxen, McKewen not only refused to do
so, but made the assault on him without any cause, excepting
that Coxen would not move on with his team, and inflicted
serious injuries upon him.   It was for the jury to determine
between the witnesses, and, judging from the verdict, they
evidently accepted the plaintiff's account of the difficulty.

We said in *Smith* v. *P. W. & B. R. Co.*, 87 Md. 51, that
" the force with which the act complained of was done is not
the test by which the inquiry as to whether punitive damages
are recoverable is to be determined ; " and we had so stated
in effect in the case of *P. W. & B. R. Co.* v. *Hoeflich*, 62 Md.
307, but in those cases we also quoted with approval from
*Quigley's case*, 21 Howard, 213, that " Whenever the injury
complained of has been inflicted maliciously or wantonly and
with circumstances of contumely or indignity, the jury are
not limited to the ascertainment of a simple compensation for
the wrong committed against the aggrieved person.   But the
malice spoken of in this rule is not merely the doing of an
unlawful or injurious act.   The word implies that the act com-
plained of was conceived in the spirit of mischief, or of crim-
inal indifference to civil obligations."   If the servants of the
defendants, acting on the belief that it was their duty to re-
move Coxen or his team, in order to clear the way for other
customers, had used more force in doing so than was necessary,

it would not necessarily have made them liable for punitive damages, but when one of them used an instrument, such as has been described, in the manner and with the results spoken of by the plaintiff and his witnesses, such conduct was evidence of an evil motive in the act done which the jury was properly permitted to consider, in passing on the question of damages. " The tort is aggravated by the evil motive and on this rests the rule of exemplary damages." *Railroad Co.* v. *Arms*, 1 Otto, 493. In one of the latest cases on the subject in this Court we held that if the jury found that the plaintiff " was treated with reckless violence and indignity " they could award punitive damages. *Thillman* v. *Neal*, 88 Md. 525. Even if a defendant has a right to do in a proper manner the act complained of, if it be done " wantonly and in a high-handed and outrageous manner " he is liable to exemplary damages. *P. W. & B. R. Co.* v. *Larkin*, 47 Md. 164. Can it be doubted that it was " wanton, high-handed and outrageous " in McKewen to beat the plaintiff over the head with a monkey-wrench eighteen inches long, break his nose and otherwise seriously injure him, simply because he refused to move his team until the commission merchant was communicated with, even conceding that he had no right to make such a demand ? Yet that is what the plaintiff's testimony showed, and when the prayer authorized the jury, in its discretion, to award exemplary damages, if it found the act of McKewen to be " wanton and attended with reckless violence," it was clearly free from the objection that there was no legally sufficient evidence to justify its submission. The judgment must be affirmed.

*Judgment affirmed, the appellants to pay the costs.*

(Decided January 17, 1901.)