114 So.2d 221 (1959)
Marie WILLIAMS, Appellant,
v.
Lester P. FROHOCK, Appellee.
No. 58-767.
District Court of Appeal of Florida. Third District.
August 27, 1959.
Rehearing Denied September 11, 1959.
*222 Albion & Greenfield, Miami, for appellant.
Dixon, DeJarnette, Bradford, Williams, McKay & Kimbrell, Miami, for appellee.
CARROLL, CHAS., Judge.
Appellant Marie Williams sued appellee Lester P. Frohock for compensatory and punitive damages for causing an automobile accident in which she was injured. A jury verdict awarded appellant $10,000 compensatory damages. The trial judge withdrew punitive damages from the jury's consideration.
The successful plaintiff appealed, raising the sole question of whether the court erred in excluding punitive damages. On the particular facts of this case as disclosed, we hold that the trial court ruled correctly in excusing the defendant from the charge of gross negligence, and, therefore, was not in error in excluding punitive damages.
The defendant, while driving in downtown Miami in the daytime, suffered a sudden illness in which he "blacked out." His car went out of control, leaped the curb and injured the plaintiff who was a pedestrian on the sidewalk.
It is the law of this state, as recognized by the Supreme Court in Bridges v. Speer, Fla. 1955, 79 So.2d 679, 681, "that where one has notice or knowledge of the existence of a physical impairment which may come on suddenly and destroy his power to control an automobile, it is negligence to an extreme degree for such person to operate such vehicle." See, also, Johnson v. State, 148 Fla. 510, 4 So.2d 671, 672; Bryan v. Bryan, Fla. 1952, 59 So.2d 513, 514.
But, as pointed out in Bridges v. Speer, supra, it was held in Baker v. Hausman, Fla. 1953, 68 So.2d 572, 573, that a driver may be excused from a charge of negligence or gross negligence where he "suddenly `blacks out', faints or suffers a sudden `attack or stroke,' loses consciousness and control of his car causing injury to himself or his guest without premonition or warning of his condition."
The facts of the instant case fit that holding in the Baker case rather than the holding of the Bridges case. This defendant had suffered loss of consciousness several times before, but never while driving. He had one such illness in Miami in 1954, which was preceded by certain extended hard physical labor. His family physician saw him following that attack, and it appears that the illness was attributed to his over-exertion. The doctor found no evidence of convulsion or epileptic seizure on that occasion, and made no such diagnosis. Similar illness in North Carolina a year or so later, and another such illness in Miami later, were not observed and diagnosed as convulsive seizures and Frohock attributed them to bilious attacks. After the last of such illnesses, which occurred about a year before this accident, the same doctor examined Frohock and again made no diagnosis of convulsive seizure. According to Frohock, when he met the doctor some time later and asked what had been the matter with him, the doctor answered: "I'll be damned if I know."
Ordinarily the fact that a person has one or more sick fainting spells over a period of years could well be considered enough to put such party on notice that it could and might happen again, at any time, such as while driving an automobile.
However, in the present case, as to the earlier "spells" the defendant had suffered, he had separate excuses or reasons which he assigned for them, and because of which he may not have felt any danger or probability of recurrence. Moreover, the fact that his doctor did not recognize and diagnose the condition as one furnishing a propensity to its repetition, tended to *223 make the defendant unaware of any such danger. Certain of his doctor's testimony is enlightening in this connection:
"Q. Counsel called your attention about a hospital record, about something that happened the year before in North Carolina, and again the word `convulsion' is used in there; but have you ever talked to any doctor or seen any report from any doctor, or any medical man who would be able to make a diagnosis that they saw him, or treated him for a convulsive seizure? A. As far as I know, these were never observed medically.
"Q. So a layman or somebody told you he had something wrong with him and somebody got the word `convulsion' in there, without it actually being a medical diagnosis; isn't that right, Doctor? A. That's right.
"Q. And as far as you know personally, the first time this man ever had a convulsive seizure and diagnosed as such was after this accident, or the same day of the accident up here that we're talking about; isn't it? A. Yes, sir.
* * * * * *
"Q. At no time before the accident did you have any reason to tell this man not to drive, did you? A. No.
"Q. And you never told him it would be unsafe for him to drive, did you? A. No.
"Q. And you were the family doctor right on there, through until now? A. That's right."
The trial court was not in error in concluding that the defendant's medical history was not such as to necessarily give him a "premonition or warning of his condition," although on looking back, after what happened to Frohock at and following this accident, the doctors for the first time, and with the benefit of hindsight, classified the earlier incidents as having been convulsive seizures resulting from brain damage and thus likely to recur.
Thus, notwithstanding the sudden blackout which caused the defendant to lose control of his car and injure the plaintiff, it was not error for the trial court to excuse the defendant from the charge of gross negligence.
For the reasons stated the judgment appealed from should be and hereby is affirmed.
Affirmed.
HORTON, C.J., and PEARSON, J., concur.