565 A.2d 102

**Barbara G. THORNE**

v.

**Lawrence J. CONTEE, et al.**

**No. 44, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Nov. 1, 1989.

Certiorari Denied Feb. 9, 1990.

482

Philip J. Santa Maria (Santa Maria, Greenberg & Shelton, Chartered, and Stephen P. Johnson, on the brief), Gaithersburg, for appellant.

Hugh E. Donovan (Michael P. Broderick, on the brief), Silver Spring, for appellees.

Argued before BISHOP, GARRITY and ALPERT, JJ.

BISHOP, Judge.

A Montgomery County jury awarded appellant Barbara G. Thorne (Thorne) damages in the amount of $500,000, jointly and severally, against appellees Lawrence J. Contee (Contee) and his employer, Alfred H. Smith, Jr. (Smith).

The case was tried on Thorne's two-count Amended Complaint.

The first count alleges both negligence and gross negligence against Contee and prays both punitive and compensatory damages. The first count also alleges liability on the part of Smith for compensatory and punitive damages on the theory of *respondeat superior.* In the second count Thorne alleges liability for negligent entrustment against

Smith and requests both punitive and compensatory damages.

Prior to trial, Smith filed a Motion for Summary Judgment on both counts alleging that he, individually, was not the employer of appellee, Contee. This motion was denied pre-trial.

At the start of the trial Contee admitted primary negligence and that his negligence caused the accident. Thorne then presented her case against Smith under Counts 1 and 2 and as to both Smith and Contee on the damage issue. At the conclusion of Thorne's case, the court granted Contee's and Smith's motions for judgment on the punitive damages issue in Counts 1 and 2. The court, although asked by Smith to dismiss only the punitive damages aspect of the second count, dismissed that count in its entirety. At this point Smith admitted an agency relationship with Contee. The trial resumed with the only remaining issue being the liability of Contee and Smith for compensatory damages under Count I. After the jury returned the verdict, the court denied the motions filed by all the parties for a new trial.

## ISSUES

I. Whether, as a matter of law, sufficient evidence of Contee's gross negligence in the operation of a tractor-trailer was produced to allow the issue of punitive damages to be considered by a jury.

II. Whether employer Smith may be found liable for punitive damages, based on the gross negligence of his employee Contee while the latter was operating Smith's vehicle.

III. Whether punitive damages may be awarded on a theory of liability when there has been no award of compensatory damages under the same theory of liability, although compensatory damages have been awarded under a different theory for the same incident.

Finally, in the cross appeal, appellees raise the following issue:

IV. Whether the trial court erred in refusing to strike evidence of vehicle defects and Contee's illness when primary negligence had been admitted, and in refusing to instruct the jury not to consider punitive damages, when the only remaining issue was compensatory damages.

## FACTS

On November 11, 1982, Contee was driving Smith's 1968 Mack tractor-trailer in the right-hand lane, eastbound on Interstate 495 (the Capitol Beltway). At the same time, and in the same general area of the Beltway, Thorne was driving her Toyota automobile west on the outer loop. At approximately 12:15 p.m., Contee's tractor-trailer suddenly veered to the left, crossed six lanes of traffic, including a grass filled median, and struck the front of Thorne's car, spinning it into the path of another tractor-trailer that also struck the front of Thorne's Toyota. In its wake, the Contee tractor-trailer left one person dead and several others, including Thorne, injured.

An accident reconstruction expert called by the appellant testified that he investigated the accident scene and could find no skid marks or other indication of evasive action by the Contee vehicle. The expert further testified that because the tractor operated by Contee left no tire tracks in the median of the highway, this indicated that the tractor vaulted across the median. Additionally, the expert stated that the tractor was examined by the Automotive Safety Enforcement Division, of the Maryland State Troopers, for steering and braking defects. Based on the examination results and the accident investigation, the expert concluded that Contee lost control of his faculties, not his vehicle.

Isaac Benson, a former driver for Smith, testified that between August of 1981 and June of 1982, he had driven the same tractor that was involved in the accident. At that time the vehicle was operated with bad tires, faulty lights,

and a steering problem that had been reported approximately 200 times. Benson further testified that the steering problem would cause the steering wheel to lock and pull the truck to the left. The steering defect was never corrected. Benson testified that he was fired for refusing to drive a defective tractor. Another former driver for Smith testified that repairs were routinely put off until weekends but because the tractors were on the road then the scheduled repairs were rarely made. A third former tractor-trailer driver for Smith testified that while driving Smith vehicles he received many police citations for defects on the vehicles. He testified further that the defects specified in the tickets were not repaired until the expiration of the time limit specified on the ticket. Contee's deposition testimony, which was read into evidence, indicated that the vehicle had a steering defect which caused the tractor to pull hard to the left. At one point in his deposition, Contee seemed to relate the steering defect to the accident. He was asked, "Were you able through the use of your strength to hold the truck within a single lane as you were driving back to the shop?" He responded, "this is when the accident happened."

Contee's medical records, introduced into evidence, indicated that he had a history of at least a dozen reported seizures in the preceding nine years. Neurologist David Satinski, M.D., examined Contee approximately one month after the accident and testified that Contee admitted to blacking out while driving the tractor on November 11, 1982. Satinski opined that Contee had a seizure disorder and that Contee's blackout at the time of the accident was a product of that disorder. Additionally, a mechanic who had worked for Smith testified that a month or two before the accident he witnessed Contee having a seizure in the Brandywine shop.

The appellees contended that Contee's medical records indicate that Contee's seizures were consistently attributed to a psychiatric problem and not a seizure disorder. Dr. Satinski had diagnosed Contee as having a psychiatric prob-

lem and not a seizure disorder in 1974, "despite the clinical history of seizures." Additional evidence indicated that Contee had ceased taking medication, was advised in 1977 by a treating physician that he was "o.k. to drive," and that Contee stated on his employment application that he suffered from no disability that would prevent his driving a tractor. Further testimony indicated that Contee's seizure in the Brandywine shop was reported to Smith as an incident of heat exhaustion, although he admitted that he thought at the time that there was a possibility that Contee had suffered a seizure.

The jury returned a verdict for Thorne, against both Contee and Smith, jointly and severally, for $500,000 in compensatory damages. All parties filed motions for a new trial. The circuit court, without hearing or opinion, denied the motions. Thorne noted a timely appeal. Smith and Contee cross-appealed.

## DISCUSSION

### I.

Thorne first argues that legally sufficient evidence was produced at trial that would have permitted the jury to consider awarding her punitive damages. Smith and Contee respond that the evidence of gross negligence must meet the preponderance of the evidence test, as a matter of law. They contend that Thorne has not demonstrated by a preponderance of the evidence that Contee had engaged in grossly negligent conduct warranting punitive damages.

The issue of punitive damages was withdrawn from the consideration of the jury by the court on a Motion for Judgment. Md.Rule 2-519(b) provides:

**Rule 2-519. MOTION FOR JUDGMENT**

(b) Disposition.—When a defendant moves for judgment at the close of the evidence offered by the plaintiff in an action tried by the court, the court may proceed, as the trier of fact, to determine the facts and to render judgment against the plaintiff or may decline to render

> judgment until the close of all the evidence. *When a motion for judgment is made under any other circumstances, the court shall consider all evidence and inferences in the light most favorable to the party against whom the motion is made.* (Emphasis added).

The latter part of the rule applies here. All of the evidence and inferences therefrom must be considered in the light most favorable to Thorne—the party against whom the motion was made. *Pahanish v. Western Trails, Inc.,* 69 Md.App. 342, 517 A.2d 1122 (1986).

> The determination whether appellant met her burden of proof is a matter entrusted solely to the jury. Although the trial judge, in ruling on a motion for judgment, must assess the sufficiency of the evidence to generate a jury question, once he or she has done so, it is up to the jury to determine the ultimate question, whether the burden of proof has been met. In making its determination, the jury assesses and evaluates the weight to be assigned to the evidence presented to it and decides its effect. Neither the trial court nor this Court is permitted to substitute its evaluation of that evidence for that of the jury. (Citations omitted).

*Thodos v. Bland,* 75 Md.App. 700, 713–14, 542 A.2d 1307 (1988).

### A.

Before we decide whether there was sufficient evidence to meet the standard, we must decide whether the operation of the automobile by a person with a known seizure disorder constitutes wanton or reckless conduct. This specific issue has not been decided in Maryland; however, this State has decided issues involving punitive damages in motor vehicle negligence cases.

In order to award punitive damages, the conduct alleged must be recognized as sufficiently outrageous or extraordinary to warrant issuance of such award.

In *Smith v. Gray Concrete Pipe Co. Inc.*, 267 Md. 149, 297 A.2d 721 (1972) the Court first articulated the standard required for the award of punitive damages in motor vehicle cases, i.e., a wanton or reckless disregard for human life in the operation of a motor vehicle, with the known dangers and risks attendant to such conduct. *Id.* at 168, 297 A.2d 721. The standard was based, in part, on the Maryland crime of manslaughter by motor vehicle (Annotated Code, Art. 27, § 388) which requires proof of gross negligence:

> And if, as a test, it has been regarded as adequately stringent to serve as a basis for possible imprisonment, then, surely, there appears to be no valid reason for deeming it too liberal for imposing civil sanctions.

*Id.* at 168, 297 A.2d 721. The *Smith* Court was not presented with a set of facts to which the new standard could be applied.[1]

In the first application of the standard to a set of facts, the Court held that "one may infer a reckless or wanton disregard for human life from the combined acts of voluntarily drinking until intoxicated and then operating such a potentially dangerous instrumentality as an automobile." *Nast v. Lockett, et al.*, 312 Md. 343, 362–63, 539 A.2d 1113 (1988). In *Nast*, one of the defendants was driving an automobile while intoxicated and the other defendant was driving while under the influence of alcohol. The circuit court decided as a matter of law that the defendants' conduct, even considering their drinking, did not amount to such a wanton or reckless disregard for human life that would permit submission of the matter of punitive damages to the jury. The Court reversed in part holding that a finding by the jury that one defendant was driving while intoxicated would be sufficient for the jury to conclude that he was grossly negligent. *Id.* at 366, 539 A.2d 1113. On

---

1. The Court set the standard in answer to a question certified to it by the United States District Court for the Eastern District of Virginia, pursuant to Maryland's Uniform Certification of Questions of Law Act. Maryland Cts. & Jud.Proc.Code Ann. §§ 12–601 to 12–609 (1984 Repl.Vol.).

the other hand, the Court held that the other defendant's degree of impairment, not having reached the level of intoxication, would not be sufficient to elevate her negligence to gross negligence. *Id.*

Although the Maryland courts have never ruled that operating a motor vehicle while suffering from a seizure disorder constitutes a wanton and reckless disregard for human life, in *Moore v. Presnell*, 38 Md.App. 243, 246 n. 4, 379 A.2d 1246 (1977), this Court made reference to the fact that such a condition, if known by the driver, will subject him to some liability if it later causes an accident. The degree of such liability was not decided.

A few other jurisdictions have had the occasion to decide this issue. In *Jackson v. Co-op Cab Company*, 102 Ga. App. 688, 117 S.E.2d 627 (1960) a cab driver, previously advised of his susceptibility to black out while driving, continued to drive. Subsequently, he blacked out while driving. The court held that these actions posed a jury question on whether the conduct showed such conscious indifference to consequence as to authorize exemplary damages. *Id.* 117 S.E.2d at 631. In so ruling, the Georgia court, like the Maryland Court of Appeals, relied, in part, on prior decisions dealing with criminal negligence in the operation of an automobile:

"it would be for a jury to say whether the act of one who knew he was subject to occasional sudden attacks of vertigo or like malady, which rendered him wholly unable to steer an automobile or to control its movements, in undertaking to drive such an automobile at a high rate of speed along a public highway, was such a disregard of probable consequences as amounted, under the circumstances in proof, to criminal negligence as to one who was injured by the defendant's inability to steer his machine."

If such operation of a motor vehicle poses a jury question as to criminal negligence, it undoubtedly does the same on the issue of whether the conduct shows such conscious

indifference to consequence as to authorize exemplary damages in a civil action.

*Id.*

The New York Court of Appeals held that the conduct required to predicate a conviction was more severe than mere negligent conduct:

[T]his conduct arises when the actor has knowledge of the highly dangerous nature of his actions or knowledge of such facts as under the circumstances would disclose to a reasonable man the dangerous character of his action, and despite this knowledge he so acts. That he does not view his conduct as dangerous is of no consequence; his lack of realization of the danger involved may arise from his abnormally reckless temperament or from unexpectedly favorable results of previous conduct of the same sort.

*People v. Eckert,* 2 N.Y.2d 126, 157 N.Y.S.2d 551, 556, 138 N.E.2d 794, 799 (1956). The court went on to conclude that:

The evidence shows that the defendant had prior knowledge that he was subject to epileptic seizures which would strike without notice and leave him incapable of operating and controlling an automobile for a period which might extend from seconds to approximately a minute.

\* \* \* \* \* \*

The evidence also shows that despite this prior knowledge of the dire risk to which his operation of an automobile would expose himself and others, he nevertheless operated an automobile; that he had a seizure while operating the automobile and that he lost control of it and consequently caused the death of another. This conduct did not have its origin in a lack of awareness; it was not ordinary carelessness or thoughtlessness. It went beyond the bounds of lack of skill and foresight and betokens a disregard by the accused and an indifference to the rights of others. If proved beyond a reasonable doubt, it would constitute driving a vehicle "in a reckless

or culpably negligent manner" in violation of section 1053–a of the Penal Law.

*Id.* 157 N.Y.S.2d at 557, 138 N.E.2d at 800.

In *Williams v. Frohock,* 114 So.2d 221 (Fla.Dist.Ct.App. 1959), the court was presented with the sole issue of whether the trial judge erred by withdrawing punitive damages from the jury's consideration in an automobile tort case. Quoting from *Bridges v. Speer,* 79 So.2d 679, 681 (Fla.1955), the court stated "that where one has notice or knowledge of the existence of a physical impairment which may come on suddenly and destroy his power to control an automobile, it is negligence to an extreme degree for such person to operate such vehicle." The trial judge's decision, however, was affirmed by the court which held:

> Ordinarily the fact that a person has one or more sick fainting spells over a period of years could well be considered enough to put such party on notice that it could and might happen again, at any time, such as while driving an automobile.
>
> However, in the present case, as to the earlier "spells" the defendant had suffered, he had separate excuses or reasons which he assigned for them, and because of which he may not have felt any danger or probability of recurrence. Moreover, the fact that his doctor did not recognize and diagnose the condition as one furnishing a propensity to its repetition, tended to make the defendant unaware of any such danger.

114 So.2d at 222–23.

■ Thorne contends that in the situation where a person has reason to know that he suffers from an illness that can cause a seizure to occur without aura,[2] and then undertakes to operate a motor vehicle, it involves an even more aggravated indifference to life than existed in *Nast.* We agree. Unlike the intoxicated driver in *Nast,* who had diminished

---

**2.** Aura is defined as the beginning of a seizure as recognized by the patient; a peculiar sensation felt by the patient immediately preceding an epileptic attack. Stedman's Medical Dictionary 127 (3d Ed., 1974).

control and reflexes, a driver who has become unconscious during a seizure has no control and no reflexes. An intoxicated driver has his judgment impaired by the effects of alcohol when making the decision to drive. A person suffering from a seizure disorder makes a deliberate, clear-headed decision to drive, knowing that he could, as in the past, pass out at any time without warning.[3] For these reasons, we hold that the operation of the tractor-trailer by Contee, who suffered from a known seizure disorder, may be so extraordinary and outrageous as to constitute wanton or reckless conduct, sufficient to predicate an award of punitive damages.[4]

## B.

■ We must now determine whether Thorne met her burden of production on the issue. In order for the issue of punitive damages to go to the jury, Thorne must have produced sufficient evidence of Contee's wanton or reckless conduct to meet the preponderance of the evidence test.

When we look at this evidence, in the light most favorable to Thorne, we find medical records of Contee from as far back as 1974 which indicate that Contee was treated or examined for his seizures in at least six hospitals, over the course of eight years. In most of his interviews with physicians, Contee reported having a history of seizures. He had been prescribed medication to control the seizures but was no longer taking the medication at the time of the accident. Dr. Antonio Stazio, who examined Contee in 1974 noted the importance of continued use of medication:

> Diagnosis of seizure disorder, observed by Dr. Ovacik when a seizure occurred in his office. One cannot argue

---

3. The issue of whether a person suffering from extreme exhaustion who falls asleep behind the wheel of a motor vehicle amounts to conduct sufficient for an award of punitive damages is not decided in this opinion.

4. We do not decide the issue of whether the same standard would apply to non-commercial enterprises which do not expose the public to dangerous instrumentalities.

with the element of history ... [t]he patient should be on a regular medication, and a prescription of Dilantin 100 mg. tid should be started at once. The patient, however, seems to be unwilling to take this medication, although persuasion should be exercised in convincing him of the importance of taking this medication.

Over the eight-year period, the records indicate at least 15 incidences of seizures were reported prior to the accident. One such incident preceded the accident by only a little over two months. Contee's seizures were diagnosed as being the result of a psychological disorder. Knowing all of this, Contee reported to his employer that there were no medical reasons why he could not operate a tractor-trailer. In April of 1981, while he was then employed by Smith, Contee was taken to a hospital because he was involved in an automobile accident. The treating physician noted that "Pt. stated, 'I blacked out three times this morning and fell down, and then I blacked out while driving, causing this.'" Later, Contee stated that on the day preceding the accident he was having difficulty steering the tractor because of mechanical problems with the tractor and that the problem was becoming worse. On the day of the accident Contee operated the same loaded tractor-trailer on a public highway. Less than one month after the accident Contee admitted to a neurologist that on the day of the accident he "unexpectedly and suddenly lost consciousness." Contee later stated in his deposition that he believed he had a seizure while driving on the day of the accident. A police expert in the field of accident reconstruction testified that in his opinion the accident was caused by Contee's loss of control over his faculties.

All of this evidence, taken in the light most favorable to Thorne, exceeds the burden imposed by a motion for judgment. There was sufficient evidence to indicate a wanton or reckless disregard for human life such that a reasonable jury could find Contee liable for punitive damages. The jury could have concluded that Contee knew of his susceptibility to have seizures while driving and yet, after withhold-

ing that information from his employment application, obtained a job driving heavy tractor-trailers on public highways. Similar evidence has been found to constitute wanton or reckless conduct in other jurisdictions. *See Jackson v. Co-op Cab Co., supra; People v. Eckert, supra.* Likewise, the jury could find the fact that Contee resisted taking his medication indicates his disorder was controllable by medicine but without it he should not have been driving at all. Furthermore, the jury could find Contee's conduct was made even more outrageous by continuing to drive a tractor, with poor steering, that required all his faculties to be operating at an optimum level. That the alleged defective steering caused the tractor to pull to the left could be considered as a factor which, coupled with Contee's blackout, contributed directly to the movement of the tractor over the median strip and into the opposing lanes of traffic and thus caused the injuries to Thorne.

Contee argues that *Williams v. Frohock, supra,* is dispositive and that the subjective knowledge of Contee—that he had a seizure disorder—was not proven by a preponderance of the evidence. It is not necessary that Contee actually, subjectively knew he suffered a seizure disorder. "It is enough that he knows or has reason to know of circumstances which would bring home to the realization of the ordinary, reasonable man the highly dangerous character of his conduct." Restatement (Second) of Torts § 500 comment c (1965). Furthermore, the facts in *Williams* distinguish that case from the instant one. In *Williams* the defendant had suffered several blackouts or seizures over a period of years but none of them were diagnosed as a seizure disorder. His first illness was preceded by an extended period of hard physical labor and his others were attributed to a liver disorder. Contee has a medical history replete with notices of an unexplained seizure disorder. Also, Contee suffered substantially more blackouts over a longer period of time than those suffered by the defendant in the *Williams* case. Taking all the evidence and inferences in the light most favorable to Thorne, there was suffi-

cient evidence of wanton and reckless conduct to allow a jury to assess punitive damages. We hold that the trial court erred in granting appellees' motion.

## II.

■ We now consider whether an employer may be found vicariously liable for punitive damages based on the wanton and reckless conduct of an employee in causing an automobile accident. Thorne contends that if as against Contee we determine that the issue of punitive damages should have been submitted to the jury the doctrine of *Embrey v. Holly,* 293 Md. 128, 442 A.2d 966 (1982) requires that the question of Smith's liability for punitive damages be submitted to the jury as well.

Smith and Contee respond that there is no authority for permitting the allowance of punitive damages vicariously against an employer in motor vehicle negligence cases. Furthermore, they contend that the allowance of punitive damages solely on the basis of *respondeat superior* is wholly inconsistent with the stringent legal threshold, for submission of the issue to a jury in motor vehicle negligence cases, imposed by *Nast v. Lockett, supra.*

In *Embrey v. Holly, supra,* the Court was presented with the issue of whether punitive damages were allowable against an employer solely on the basis of *respondeat superior* for an employee's defamatory comments. The Court explained the status of the law in Maryland by noting that an employer is ordinarily responsible for the tortious acts of his employee committed while the employee was acting within the scope of the employment relationship. *Id.* at 134, 442 A.2d 966. The Court went on to observe:

> Although the master's liability for compensatory damages in the usual case is beyond question, it is far from universally accepted that the master can, on similar principles, be held responsible in punitive damages for its employee's tortious acts.

A majority of courts have adopted the rule that if the servant has committed a tort within the scope of his employment so as to render the employer liable for compensatory damages, then the master may likewise be liable for punitive damages if the servant's act is such as to properly occasion such liability.... However, a substantial minority of courts declare that an employer may not be held vicariously liable for punitive damages unless it either authorizes, participates in, or ratifies the employee conduct giving rise to such damages.

(footnotes omitted). *Id.* at 135, 442 A.2d 966. The Court then held that:

[t]he decisions of this Court, while not discussing the question in light of the first amendment considerations raised here, have on numerous occasions sided with those which vicariously impose punitive damages on the master for acts of the servant committed during the course of his employment without regard to whether the master authorized, participated in, or ratified the employee's conduct. *See Safeway Stores, Inc. v. Barrack,* 210 Md. 168, 176–77, 122 A.2d 457, 461–62 (1955); *Boyer & Co. v. Coxen,* 92 Md. 366, 368, 48 A. 161, 162 (1901); *Balt. & Yorktown Turn. v. Boone,* 45 Md. 344, 354–56 (1876); *B & O, R.R. Co. v. Blocher,* 27 Md. 277, 286 (1867).

The Court therefore placed Maryland squarely within the majority position. Judge Digges did not limit the rule's application to defamation cases only. As support for this holding the Court quoted from *Boyer & Co. v. Coxen,* 92 Md. 366, 368, 48 A. 161 (1901):

Although the rule [holding the principal liable for punitive damages] may in some cases result in hardship to the principal, yet, if carefully applied, there is less danger of injustice in enforcing it, in proper cases, than in denying it in all cases unless the principal has actually participated in the wrong done by his agent or servant or authorized or ratified it. *Any* liability of the master for a tort of his servant is dependent upon the fact that the servant was acting at the time in the course of his

master's service, and for his benefit, within the scope of his employment. The master selects him for that service and knows, or ought to know, what sort of a person he is investing with authority to act for him. The servant is acting for his master when the wrong is done—it is in contemplation of law the act of the master. In a great many cases, a judgment against the servant would be of no value to the injured one and no punishment to the wrong-doer, as it could not be collected. Every character of business, of any considerable proportions, is for the most part conducted through agents and servants, and if the principal or master cannot be held responsible in punitive damages, it would in many, perhaps in most actions of torts, be equivalent to abolishing that character of damages, if he is to be relieved by reason of the fact that the act complained of was done by the servant, and not by him individually.

(Emphasis in original.) *Embry v. Holly, supra*, 293 Md. at 135–36, 442 A.2d 966. "It is thus apparent that, in this State, the tortious act of the servant done in the course of his employment is ordinarily the legal act of the master, and in this sense, the employer is not free of 'fault.'" *Id.* at 136, 442 A.2d 966. The petitioners in *Embrey* suggested that, even if not applied generally in Maryland, the test contained in the Restatement, Second, of Torts, § 909 should at least be applied in defamation cases to the imposition of punitive damages against a principal for the defamatory conduct of the agent.[5] *Id.* at 138, n. 11, 442 A.2d 966. The Court note that Section 909 represents the rule applied

----

5. Section 909 states as follows:

   Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,
   (a) the principal or a managerial agent authorized the doing and the manner of the act, or
   (b) the agent was unfit and the principal or a managerial agent was reckless in employing or retaining him, or
   (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or
   (d) the principal or a managerial agent of the principal ratified or approved the act.

by a minority of jurisdictions to all claims for punitive damages based on *respondeat superior* and that it is grounded in the policy decision to prohibit the imposition of liability without fault. However, the Court recognized that "Maryland has uniformly applied the just-articulated 'broad' rule of vicarious liability for punitive damages...." *Id.* at 137–38, 442 A.2d 966. The policy consideration adopted by the Court noted that "imposition of punitive damages on the master for the appropriate tortious acts of its servant encourages greater employer accountability and serves to prevent employee misconduct by fostering supervision." *Id.* at 140, 442 A.2d 966. Therefore, the Court would not discard the majority "broad" rule of vicarious liability grounded in the policy of deterrence, even when faced with a defamation action. We do not think the Court would impose a more stringent standard in an automobile negligence case. The appellees are correct in pointing out that vicarious liability for punitive damages has been found to exist in Maryland only in the context of intentional tort cases; the courts have only been presented with the issue in intentional tort cases.[6] There is, however, no authority limiting its application to intentional torts.

In *Smith v. Gray Concrete Pipe Co., supra,* there is language which indicates that an employer can be vicariously liable for punitive damages. In *Smith,* the plaintiff sued Edwards, a truck driver, and asked for punitive damages. The plaintiff also sued Gray, based on vicarious liability, for punitive damages. After finding insufficient evidence of wanton or reckless conduct by Edwards, the Court stated:

---

6. *Embrey v. Holly, supra* (defamation); *Wedeman v. City Chevrolet Co.,* 278 Md. 524, 366 A.2d 7 (1976) (fraud); *Safeway Stores, Inc. v. Barrack,* 210 Md. 168, 122 A.3d 457 (1955) (false imprisonment and malicious prosecution); *Dennis v. Baltimore Transit Co.,* 189 Md. 610, 56 A.2d 813 (1948) (false imprisonment); *Boyer & Co. v. Coxen,* 92 Md. 366, 48 A. 161 (1901) (assault); *B & O Railroad Co. v. Barger,* 80 Md. 23, 30 A. 560 (1894) (assault); *Philadelphia, W & B Railroad Co. v. Larkin,* 47 Md. 155 (1877) (assault and battery); *Baltimore & Yorktown Turnp. Road v. Boone,* 45 Md. 344 (1876) (forcible ejection of R.R. passenger); *B & O Railroad Co. v. Blocher,* 27 Md. 277 (1867) (assault).

It follows that since exemplary damages are not recoverable against Edwards, neither may Gray be liable therefor on the basis of agency.

*Id.* 267 Md. at 171, 297 A.2d 721. It suggests that had the Court found exemplary damages to be recoverable against Edwards, Gray could have been liable therefor on the basis of agency.

Therefore, since we have determined that the issue of punitive damages against Contee should have been submitted to the jury, the jury must also be permitted to consider the issue of appellee Smith's liability therefor on the basis of *respondeat superior.* Such liability would be appropriate upon a finding that Contee was acting, at the time, in the course of his master's service, and for his benefit within the scope of his employment. In deciding upon an award, if any, the jury may consider the degree of culpable conduct exhibited by appellee Smith and his ability to pay.

### III.

Finally, appellant argues that there was sufficient evidence adduced at trial to permit a jury to find, by a preponderance of the evidence, that appellee Smith negligently entrusted his truck to appellee Contee. Appellant avers that she should be granted a new trial on the issue of punitive damages for negligent entrustment because compensatory damages have already been awarded to her.

Appellee Smith responds that a new trial may not be granted only on the issue of punitive damages unless there has been an award of compensatory damages on the same cause of action. Appellee points out that in the instant case there has been no award of compensatory damages for negligent entrustment so there may be no punitive damages awarded on the same theory.

In *Montgomery Ward & Co., Inc. v. Keulemans,* 275 Md. 441, 340 A.2d 705 (1975), the Court of Appeals stated the rule that there must be an award of compensatory dam-

ages, at least in a nominal amount, for an award of punitive damages to stand. In that case the plaintiff, after having been arrested for and subsequently acquitted of shoplifting, brought suit on theories of false arrest and malicious prosecution. The plaintiff received a verdict for $1,350.00 in compensatory damages on the false arrest count and $25,000.00 in punitive damages on the malicious prosecution count. The defendant appealed, contending that the award for punitive damages should be stricken. Noting that there were no compensatory damages awarded on the malicious prosecution count, the court stated:

> But this does not necessarily mean that the verdict must fail, because in a proper case it can be molded or reformed to reflect what the jury manifestly and beyond doubt intended. . . .
>
> \* \* \* \* \* \*
>
> An examination of the record makes it clear that the verdict of $1,350.00 entered on the false arrest count consisted of two elements: $1,000.00 for salary at $200.00 a week which Keulemans lost as a result of his suspension for five weeks while awaiting trial, and the $350.00 paid by Keulemans to defend him in the shoplifting case. Hence, the $350.00 fee was only recoverable in the malicious prosecution case.
>
> The trial court recognized this, and cited it as a reason for the denial of the defendant's motion for a judgment n.o.v., made before judgment absolute was entered. It would have been appropriate at this juncture for the trial court to have reformed the verdict by transferring the $350.00 award from the false arrest count to the malicious prosecution count. We see no reason why this cannot be accomplished on remand.

*Id.* at 446–47, 340 A.2d 705 (citations omitted). Therefore, the court decided there were compensatory damages for the malicious prosecution count on which to predicate the punitive damage award.

In *Rispoli v. Jackson,* 51 Md.App. 606, 445 A.2d 349 (1982) we were faced with a virtually identical issue. Al-

though we dismissed the appeal for other reasons, we addressed the punitive damage issue in *dicta*. We explained that *Montgomery Ward, supra,* clearly required that compensatory damages be awarded on the same count as punitive damages in order to sustain the punitive damages. In *Rispoli* the appellant requested that the case be remanded for trial on the negligent entrustment issue so that, at that new trial, the issue of negligent entrustment could be submitted to the jury on punitive damages. Appellant also argued in *Rispoli*, as in the case *sub judice*, that receipt of compensatory damages against the principal on the negligence count was tantamount to such an award on the negligent entrustment count. We stated that the appellant's position "lacks both reason and authority." *Id.* at 613, 445 A.2d 349. Thorne's argument is no more persuasive today than it was when we decided *Rispoli*. Therefore, we affirm the circuit court's denial of appellant's Motion for Judgment as to punitive damages under the negligent entrustment count. We hold that there must be an award of some compensatory damages under the count wherein punitive damages are claimed before there can be an award of punitive damages thereunder.

## IV.

### *The Cross–Appeal*

Smith and Contee have filed a cross-appeal in which they request this Court to remand the case for a new trial solely on the issue of what, if any, compensatory damages should be awarded to Thorne. As a basis for this request they argue that the trial court wrongfully refused to strike all evidence pertaining to punitive damages once the issue had been removed from the jury. Smith and Contee further contend that the trial court wrongfully refused to instruct the jury specifically that punitive damages were not to be considered.

■ "A trial judge's granting or refusing a new trial—fully, partially, conditionally, or otherwise—is not reviewa-

ble on appeal except under the most extraordinary or compelling circumstances." *A.S. Abell Co. v. Skeen*, 265 Md. 53, 59, 288 A.2d 596 (1972); quoting from *Carlile v. Two Guys from Harrison*, 264 Md. 475, 287 A.2d 31 (1972). Smith and Contee do not aver any extraordinary or compelling circumstances to justify reversing the trial court's exercise of discretion. They argue that the trial court erred in refusing to strike all of the evidence adduced concerning any mechanical defects and Contee's seizure disorder, since evidence of these was no longer relevant. This Court has recognized that evidence of the condition of an automobile and the operator's knowledge of such condition is relevant to a finding of negligence, *Smith v. Gray Concrete Pipe Co., Inc., supra* 267 Md. at 171, 297 A.2d 721, *Brock v. Sorrell*, 15 Md.App. 1, 5, 288 A.2d 640 (1972); and that evidence tending to show that an accident was caused by a foreseeable loss of consciousness due to a driver's illness may also be relevant to a finding of negligence. *Moore v. Presnell, supra* 38 Md.App. at 246, 379 A.2d 1246. Because the evidence which the cross-appellants' sought to strike is relevant to a finding of negligence, we hold that Smith and Contee were not deprived of a substantial right by the trial court. Additionally, the jury had uncontroverted evidence before it that the present value of Thorne's lost earnings as a result of her brain injury and disability was $839,423.00. That figure, combined with the $89,793.19 in medical bills incurred, and a modest award for pain and suffering, would amount to nearly one million dollars. Smith and Contee concede in their brief that the jury verdict was "... based upon evidence presented of psychological injuries to the appellant which was suspect at best." This indicated that the jury's verdict in the amount of $500,-000.00 was not influenced by passion, prejudice, or inflammatory matters outside its purview. Instead, it supports the inference that the jury's award was intended to be compensatory and was based on the evidence of simple negligence.

■ Smith and Contee also argue that the trial court erred in refusing to instruct the jury specifically not to consider punitive damages. The trial court did instruct the jury "... that the only issue left is the amount of compensatory damages that is to be awarded to Barbara Thorne." We agree with Judge Powers when he stated: "The questions the jury was required to decide were fully and clearly explained in the court's instructions. No purpose could have been served by telling them what they need not decide." *Murphy v. Board of County Commissioners*, 13 Md.App. 497, 508, 284 A.2d 261 (1971). We cannot say that the trial court abused its discretion by refusing to give cross-appellant's specific instruction when the instruction given was its equivalent. Maryland Rule 2–520(c); *Rhone v. Fisher*, 224 Md. 223, 167 A.2d 773 (1960). In addition, the amount of the jury verdict indicates that the jury probably did not even consider awarding punitive damages.

Cross-appellee's counsel suggested on two occasions in closing argument that the jury should "punish" Smith and Contee by their verdict. The first such occasion was not preserved for consideration by this court because no objection or motion to strike was made at the time. Also, there were no requests for mistrial or for instructions for the jury to disregard the remark. *Dorsey Bros. Inc. v. Anderson*, 264 Md. 446, 287 A.2d 270 (1972).

■ The second remark in closing argument, to which a timely objection was made, was Thorne's request that a message be sent that when one negligently causes injuries, that person will be totally responsible for all of the injuries and consequences. This is merely a description of what compensatory damages are. Besides, cross-appellants' had the last word on the punitive damages issue in their closing argument:

Mr. Santa Maria [appellant's counsel] ... told us in ... opening statement that this was a significant case. They were going to prove that the defendants ... were guilty ... of reckless disregard for human life. They were

going to ask you to return a verdict for something called punitive damages.

Punitive damages are not in this courtroom at this time. That has been taken care of by the Court itself. We are here—we are at the fallback position ... of plaintiff at this point in time, who is only seeking compensatory damages. ... [T]he significance of this case is somewhat less in view of the fact that punitive damages are no longer in this matter.

The trial court's decision to deny the motion for new trial was an example of discretion that was fairly exercised.

### Conclusion

We hold that the appellee's motion for judgment should not have been granted and the issues of Contee's liability for punitive damages, and Smith's liability therefor on the basis of *respondeat superior*, should have been submitted for the jury's consideration. The appellant's request for a retrial on the issue of Smith's liability for punitive damages, on the theory of negligent entrustment, must be denied because there was no award for compensatory damages on that count. Finally, appellees' motion for a new trial was properly denied where the failure to strike evidence did not deprive them of any substantial right and the court's instructions to the jury accurately explained the jury's duty.[7]

JUDGMENT REVERSED IN PART AND AFFIRMED IN PART; CASE REMANDED FOR TRIAL ON THE ISSUE OF PUNITIVE DAMAGES ONLY. COSTS TO BE PAID BY APPELLEES.

---

7. Because we believe that a general application of the *Embrey v. Holly* rule set out at pages 496 through 499, *supra*, if broadly applied, could result in serious inequities, we recommend that the Court of Appeals reconsider its holding in that case.