# District of Columbia
# Court of Appeals

**No. 13-CT-1143**

ANTHONY BELL,

Appellant,



FILED

FEB **25** 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

v.

**CTF-9340-13**

DISTRICT OF COLUMBIA,

Appellee.

On Appeal from the Superior Court of the District of Columbia
Criminal Division

BEFORE: WASHINGTON, *Chief Judge*, THOMPSON, *Associate Judge*, and NEWMAN, *Senior Judge*.

**J U D G M E N T**

This case was submitted to the court on the transcript of record, the briefs filed, and without presentation of oral argument. On consideration whereof, and for the reasons set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the judgment on appeal is affirmed.

For the Court:

JULIO A. CASTILLO<br>Clerk of the Court

Dated: February 25, 2016.

Opinion by Associate Judge Thompson.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CT-1143

ANTHONY BELL, APPELLANT,

FILED 2/25/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

V.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CTF-9340-13)

(Hon. A. Franklin Burgess, Jr., Trial Judge)

(Submitted September 25, 2015          Decided November 20, 2015)[*]

*Joseph A. Scrofano* was on the brief for appellant.

*Karl Racine*, Attorney General for the District of Columbia, *Todd Kim*, Solicitor General, *Rosalyn Calbert Groce*, Deputy Solicitor General, and *John J. Woykovsky*, Assistant Attorney General, were on the brief for appellee.

Before WASHINGTON, *Chief Judge*, THOMPSON, *Associate Judge*, and NEWMAN, *Senior Judge*.

---

[*] The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published upon the court's grant of appellee's motion to publish.

THOMPSON, *Associate Judge*:    After a bench trial, appellant Anthony Bell was convicted of driving under the influence ("DUI"), in violation of D.C. Code § 50-2206.11 (2012 Repl.).    He argues on appeal that (i) the evidence was insufficient to support a conviction because it did not establish that he was in physical control of his vehicle, and (ii) the trial court applied a statutory presumption that unconstitutionally relieved the District of Columbia (the "District") of its burden of proof as to whether he was "under the influence."    We disagree and therefore affirm the judgment of conviction.

**I.**

Metropolitan Police Department Officer Calvin Branch testified that, in the early hours of May 26, 2013, he was on patrol in the 2700 block of Martin Luther King Jr. Avenue, S.E., watching patrons disperse from a club that was closing for the evening.    Officer Branch testified that as the parking lot emptied, he noticed a car "sitting in the parking lot with a subject behind the wheel and the motor running[.]"    As the officer approached the vehicle, he could see a man (later

identified as appellant) sleeping in the driver's seat with his chin resting on his chest. Officer Branch knocked on the window several times in an attempt to wake appellant, with no success. Suspecting that appellant was intoxicated, Officer Branch radioed for assistance, and Officer Roderick Saunders responded.

Once Officer Saunders arrived, one of the officers opened the unlocked driver's door and shook appellant, who then "started to come around." Officer Branch testified that appellant's voice was "slurred," he smelled of alcohol, and, upon exiting the vehicle, he stumbled and "could not quite get his balance at first." The officers had to "grab a hold of him so that he would not fall on the ground[.]" When the officers let go of him, he "fell back on to the car." Appellant subsequently failed the standardized field sobriety tests ("SFSTs") conducted by Officer Saunders.

Officer Branch acknowledged on cross-examination that he did not write on the PD-199 report that the engine was running or that the keys were in the ignition. Officer Saunders testified and gave substantially the same account of what happened after he arrived on the scene. He did not "recall specifically" whether the engine of appellant's vehicle was running when he arrived, but he testified that

Officer Branch told him that the "vehicle was running" when Officer Branch first approached it.

Appellant was arrested for DUI and transported to the Seventh District police station, where Officer Saunders advised him of his rights under the Implied Consent Act, D.C. Code § 50-1905 (2012 Repl.). Appellant refused to consent to a breathalyzer test and instead signed the PD-29 Implied Consent Form indicating that he understood the consequences of refusal.

Appellant testified that when he got into his vehicle, he was tired from having worked a week of ten-hour shifts, so he put the keys in his pocket and lay back in the seat, not intending to drive home. He testified that he fell into a "deep sleep" and was "just still asleep" when the officers "pulled [him] out" of the vehicle and when Officer Saunders had him take the SFSTs. He testified that because he was "still asleep," he "could not comprehend all of the questions the officers read to [him]" when they asked him to sign the breathalyzer-test form, but, upon questioning by the court, explained that he refused to take the breathalyzer test because he had had "a couple of beers" and "figured that it would register[.]"

The trial court found that the evidence was "overwhelming" that appellant was under the influence when the officers encountered him, discrediting appellant's testimony that he was merely exhibiting the signs of having been suddenly awakened from a deep sleep. Given that Officer Branch's written report said nothing about the vehicle's engine running, the court was unable to find beyond a reasonable doubt that the vehicle was "actually in operation" at the time of the encounter. The court found, however, that appellant "was in control of the car" in that he was in the driver's seat and "had the keys [to the vehicle] in his pocket[,]" and therefore was guilty of DUI.

## II.

Appellant argues that his conviction cannot stand because the evidence failed to establish that he "was in actual physical control of the vehicle" as required by D.C. Code § 50-2206.11 (2012 Repl.). Our review of this issue is *de novo*.[1]

---

[1] *See Russell v. United States*, 65 A.3d 1172, 1176 (D.C. 2013).

Section 50-2206.11 provides that "[n]o person shall operate or be in physical control of any vehicle in the District:  (1) [w]hile the person is intoxicated; or (2) [w]hile the person is under the influence of alcohol or any drug or any combination thereof."  This court addressed the meaning of "physical control" in *Berger v. District of Columbia*, 597 A.2d 407 (D.C. 1991).  In *Berger*, police officers found the allegedly intoxicated Berger sitting in the driver's seat of his parked car; he was alone in the vehicle and no one else was in the vicinity.  *Id.* at 408.  The sole officer who testified at trial could "not remember whether the engine was running or whether the keys were in the ignition" and could not "recall how he obtained possession of the keys."  *Id.*  The officer testified, however, that when Berger was released on citation, he was "given his keys back[.]"  *Id.*  This court concluded that "[t]he trier-of-fact could reasonably find that [Berger] was in [physical] control of the vehicle under the statute[,]" because the evidence established "that he alone was in the car, that he was sitting behind the steering wheel, and that the car keys were given to him when he was released only hours later [supporting an inference that, when Berger was placed under arrest, the keys were on him or were otherwise readily accessible to police and thus to him]."  *Id.* at 409. [2]

---

[2]    The *Berger* panel went on to say that "[e]ven a drunk with the ignition keys in his pocket would be deemed sufficiently in control of the vehicle to warrant conviction."  *Id.*

*Berger* controls the outcome here, because the facts of this case cannot be distinguished in any material way. Like Berger, appellant was alone in his car and behind the steering wheel, and the trial court found that the ignition keys were in his pocket. In that position and with the keys at hand, appellant was capable of starting the vehicle should he have awakened and, in his impaired state, made a decision to drive. We therefore sustain the trial court's determination that appellant was in physical control of the vehicle for the purpose of § 50-2206.11.[3]

---

[3] Contrary to the suggestion in appellant's brief, nothing in this holding suggests that we would sustain a finding that a defendant who was "under the influence" was in physical control of her vehicle if the evidence was merely that she "possess[ed] keys to a vehicle in her vicinity" or was "waiting outside near [the] vehicle with keys in [her] pocket waiting for a taxi [she had] called to take [her] home[.]" But, as some courts have found, "an intoxicated person seated *behind the steering wheel* of a motor vehicle is a threat to the safety and welfare of the public." *Hughes v. State*, 535 P.2d 1023, 1024 (Okla. Crim. App. 1975) (emphasis added) (acknowledging that "[t]he danger is less than where an intoxicated person is actually driving a vehicle," but reasoning that there still "is a legitimate inference to be drawn that he placed himself behind the wheel of the vehicle and could have at any time started the automobile and driven away"); *see also City of Naperville v. Watson*, 677 N.E.2d 955, 958-59 (Ill. 1997) ("A person may embark upon an evening of drinking with the intention of sleeping in his or her car, but the actual decision whether to do so will be made at a time when the person's judgment is impaired by alcohol."); *Thorne v. Contee*, 565 A.2d 102, 107 (Md. Ct. Spec. App. 1989) ("An intoxicated driver has his judgment impaired by the effects of alcohol when making the decision to drive."); *Buck v. North Dakota State Highway Comm'r*, 425 N.W.2d 370, 372-73 (N.D. 1988) (agreeing with other courts that "[t]he purpose of the 'actual physical control' offense is a preventive measure" and that "[a]n intoxicated person in a motor vehicle poses a threat to public safety because he might set out on an inebriated journey at any moment.") (citations and internal quotation marks omitted). We note that the evidence that Officer Branch found appellant asleep with his chin resting on his chest suggests

(continued…)

**III.**

Appellant's remaining claim relates to D.C. Code § 50-1905 (b) (2012 Repl.), which provides that:

> If a person under arrest refuses to submit specimens for chemical testing as provided in § 50-1904.02 (a), and the person has had a conviction for a prior offense under § 50-2206.11, § 50-2206.12, or § 50-2206.14, there shall be a rebuttable presumption that the person is under the influence of alcohol or a drug or any combination thereof.

Appellant does not dispute that he had a prior DUI conviction that subjected him to this statutory presumption, but argues that the statute shifts the burden to a defendant to prove that he was not under the influence and for that reason is facially unconstitutional. Appellant also contends that the trial court "explicitly relied on the presumption and engaged in unconstitutional burden shifting[.]" Because appellant raises these arguments for the first time on appeal, our review is

(…continued)
that appellant fell asleep in the upright position of one intending to drive, rather than in a reclined position such as the officers might have observed had he lowered his seat back in order to sleep for a while.

for plain error. *See Kinane v. United States*, 12 A.3d 23, 26 (D.C. 2011). "To prevail, appellant[] must demonstrate that an error occurred, that the error was plain, and that the error was material or affected [his] substantial rights." *Id.*

Appellant is correct that "[m]andatory presumptions . . . violate the Due Process Clause if they relieve the State of the burden of persuasion on an element of an offense." *Francis v. Franklin*, 471 U.S. 307, 314 (1985). However, "[a] permissive inference does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved." *Id.*; *see also id.* at 317 ("A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion."). Thus, whether a statutory presumption is constitutional turns on whether the presumption amounts to a mandatory presumption or a permissive inference. Appellant has not shown that it is clear (and thus should have been obvious to the trial judge) that § 50-1905 (b) imposes a mandatory presumption.

In *Raymond v. United States*, 396 A.2d 975 (D.C. 1979), a failure-to-appear case, this court considered an argument similar to the one appellant makes here.

The issue was statutory language stating that "[a]ny failure to appear after notice of the appearance date shall be prima facie evidence that such failure to appear is willful." Citing the Criminal Jury Instructions for the District of Columbia, we said that "although the wording of [the statute] may be read to imply that the inference of willfulness is mandatory, it appears that in practice, the trier of fact has merely been permitted and not required to infer willfulness" *Id.* at 976-77. We concluded that the standard jury instruction, which "incorporate[d] a permissive inference, properly construes the statute." *Id.* at 977.

Here, on plain-error review, while we need not decide the issue definitively, it similarly appears that the presumption established by § 50-1905 (b) is not a mandatory presumption and does not unconstitutionally shift the burden of proof to the defendant. Like the standard jury instruction discussed in *Raymond*, the standard jury instruction corresponding to § 50-1911 (b) states that if a defendant who has a qualifying prior conviction refuses to submit to chemical testing, jurors "may, *but are not required to*, conclude that s/he was under the influence . . . at the time that s/he operated the vehicle." D.C. Criminal Jury Instruction 6.401 (5th ed. rev. 2015) (emphasis added). Thus, in practice, the statute is interpreted as "a permissive presumption . . . to avoid the constitutional infirmity of directing a

verdict on an essential element." *Id.* (comment). It therefore is not plainly unconstitutional.[4]

Appellant's trial was a bench trial, and the trial judge did not explicitly instruct himself that the presumption authorized by § 50-1905 (b) is a permissive presumption. However, "[t]rial judges are presumed to know the law[.]" *Saidi v. United States*, 110 A.3d 606, 613 (D.C. 2015). Moreover, although counsel for the District advised the judge at the outset that appellant was "subject[] . . . to the rebuttable presumption" and also referred to the presumption in closing argument, the trial judge made no reference to the presumption in explaining why he found appellant guilty.[5] *After* announcing his finding of guilt, the judge mentioned "[b]y the way" that the fact that appellant refused to give a breathalyzer sample "for the reason that the prosecutor argued" (a reference to appellant's testimony that he

---

[4] Our conclusion is consistent with the principle that "in order to avoid serious constitutional questions, we should construe the statute, according to its terms, as creating a permissive presumption or inference rather than a mandatory presumption." *In re Warner*, 905 A.2d 233, 246 (D.C. 2006).

[5] The court mentioned only the "following factors" in concluding that the evidence was "overwhelming" that appellant was under the influence: "the difficulty in awakening him; he could only awaken him by shaking; strong odor of alcohol; the slurred speech; the unsteadiness in getting out of the car[] and walking to the level ground where he was given the test; [and his] performance on the field sobriety tests…was almost a perfect failure."

feared that two beers he claimed he had consumed over three hours earlier would affect his breath score) "b[ore] on his credibility" and was "evidence of his guilt."[6] Thus, although the court considered appellant's refusal to give a breath sample, that fact was not a factor in the court's ruling, and the court in no way indicated that it thought that fact mandated a finding of guilt unless appellant proved he was not under the influence.

**IV.**

For the foregoing reasons, the judgment of the trial court is

*Affirmed.*

---

[6] We read the court's statement as meaning that appellant's explanation for his refusal supported an inference of consciousness of guilt. *Cf. Karamychev v. District of Columbia*, 772 A.2d 806, 813 (D.C. 2001) ("Karamychev's refusal to take chemical tests at the police station was evidence from which the judge could properly infer consciousness of guilt."); D.C. Criminal Jury Instruction 6.401 ("If you find that s/he did refuse to submit to a request for chemical testing, you may consider his/her refusal as tending to show his/her feelings of guilt, which you may, in turn, consider as tending to show actual guilt.").