ERNA E. HERBERT AND CHARLES A. HERBERT
*v.* JOHN KLISENBAUER AND UNSATISFIED
CLAIM AND JUDGMENT FUND BOARD

[No. 479, September Term, 1970.]

*Decided June 1, 1971.*

136

The cause was argued before MURPHY, C. J., and MOY-
LAN and POWERS, JJ.

*John P. Wade,* with whom was *Sidney Blum* on the
brief, for appellants.

*John F. Linsenmeyer,* with whom was *Samuel S. Smal-*

*kin* on the brief, for John Klisenbauer, part of appellees. *William E. Brannan,* with whom were *Moore, Hennegan, Brannan & Carney* and *Francis B. Burch, Attorney General,* on the brief, for Unsatisfied Claim and Judgment Fund Board, other appellee.

MURPHY, C. J., delivered the opinion of the Court.

The accident in this motor tort case occurred on a rainy afternoon in July of 1965 at the intersection of Taylor Avenue and Hillsway, which was controlled by a traffic light. The appellant Erna Herbert was traveling north on Hillsway, a street four lanes wide with parking on both sides. She intended to make a left turn and go west on Taylor Avenue. She turned on her left turn directional signal and stopped for the red light at the intersection. Appellee Klisenbauer, also going north on Hillsway, stopped his vehicle immediately behind Mrs. Herbert; he intended to make a right turn and go east on Taylor Avenue. When the light turned green, Mrs. Herbert proceeded fifteen to twenty feet into the intersection preparatory to making her left turn. She was almost in the middle of the intersection when she observed a car traveling east on Taylor Avenue;[1] when it became apparent that the vehicle was going to ignore the light and run through the intersection, Mrs. Herbert slammed on her brakes and stopped. Appellee Klisenbauer struck the Herbert vehicle in the rear, injuring Mrs. Herbert and damaging her vehicle.

Mrs. Herbert and her husband sued Klisenbauer, alleging that he drove his vehicle in a negligent manner, that he failed to keep a proper lookout or maintain proper control of his vehicle, and that he failed to maintain a proper distance. In view of the involvement of the unknown intruding vehicle in the accident, the Unsatisfied

---

1. Taylor Avenue at this point had four eastbound lanes, one for parking, one for turning into an industrial plant, and two for driving.

Claim and Judgment Fund was impleaded as a defendant.

The case was tried before a jury in the Circuit Court for Baltimore County. At the conclusion of the evidence, the trial judge ruled that there was no legally sufficient evidence of negligence on Klisenbauer's part to permit the Herberts to recover against him; the court directed a verdict in Klisenbauer's favor. The case was submitted to the jury on the issue of the Fund's liability to the Herberts. The jury returned a verdict in the Herberts' favor in the amount of $1,000. The Herberts appealed from the "judgments" entered in the case, claiming, among other grounds of appeal, that the court erred in directing the verdict for Klisenbauer. The Fund did not appeal from the judgment entered against it. It also urges, however, that the court was in error in directing the verdict in Klisenbauer's favor.

The question whether a party was negligent is ordinarily one of fact to be determined by the jury, and before it can be determined as a matter of law that one has not been guilty of negligence, the truth of all credible evidence tending to establish the claim of negligence must be assumed and all favorable inferences of fact fairly deducible therefrom tending to establish negligence drawn. *Fowler v. Smith*, 240 Md. 240. As we noted in *Mazer v. Stedding*, 10 Md. App. 505, meager evidence of negligence is deemed sufficient in Maryland to carry the case to the jury, it being the rule in this jurisdiction that submission of the case to the jury is required if there be any evidence, however slight, *legally sufficient* as tending to prove negligence, and the weight and value of such evidence will be left to the jury. Of course, a mere scintilla of evidence of negligence, amounting to no more than surmise, possibility, or conjecture, is not "legally sufficient" evidence of negligence justifying submission of the case to the jury. *Fowler v. Smith, supra,* at p. 247.

Like *Traish v. Hasan,* 245 Md. 489; *Hillebrecht v. Stein,* 245 Md. 93, and *Yellow Cab Co. v. Bonds,* 245 Md. 86, this case shares the common characteristics of an in-

truding vehicle violating the rules of the road, causing the forward of two cars traveling in the same direction to come to an abrupt stop, and thereafter being struck in the rear by the following vehicle. In such circumstances, the driver of the rear car is not relieved of his duty to the forward driver to exercise that degree of care which a person of ordinary prudence would exercise under similar conditions. *See Baltimore Transit Co. v. Prinz,* 215 Md. 398. Specifically, the fact that the intruding vehicle ran through the red light in no way alters the duty imposed upon the driver of the rear vehicle under Maryland Code, Article 66½, Section 224(a) (now Section 11-310) not to follow another vehicle "more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic and the condition of the highway." *Hillebrecht v. Stein, supra,* at page 96. Nor does the existence of the emergency created by the intruding vehicle relieve the driver of the rear vehicle of his duty to maintain a safe distance between vehicles and to keep his automobile well in hand to avoid doing injury to the forward vehicle, so long as the driver is proceeding in accordance with his rights. *Brehm v. Lorenz,* 206 Md. 500; *Mitchell v. Dowdy,* 184 Md. 634. In *Brehm* it was noted that where the driver of the forward vehicle brings it to a sudden stop because of some emergency, without giving any warning to a driver following at a reasonable distance, "there is no presumption that the rear driver was negligent *unless he had the chance to stop after the necessity of stopping was apparent.*" (at page 509) Of course, in the final analysis, the degree of care incumbent upon the rear driver to avoid collision with the front vehicle is not susceptible of precise formulation; it must depend upon the facts and circumstances of each particular situation. *Bernardi v. Roedel,* 225 Md. 17. The question whether the following vehicle involved in a rear-end collision neglected to use due care is ordinarily for the jury to decide. "Only in exceptional cases, where it is clear * * * that reasonable minds would not differ with regard to

the facts, will the question of negligence pass from the realm of fact to that of law." *Altenburg v. Sears,* 249 Md. 298, 304.

There was evidence before the jury in the present case that because of the cars parked on Taylor Avenue and Hillsway, Klisenbauer could not make his right turn on Taylor Avenue until Mrs. Herbert had cleared the intersection. There was evidence showing that after the light turned green for northbound Hillsway traffic and Mrs. Herbert had proceeded into the intersection, Klisenbauer waited a few seconds before moving his vehicle; that the greatest distance between his vehicle and that of Mrs. Herbert prior to the collision was six to eight feet; that Klisenbauer's speed was no greater than five miles per hour; and that his left front fender struck the right rear of the Herbert car. There was evidence showing that immediately after the accident Mrs. Herbert asked Klisenbauer whether he saw the intruding car go through the light, to which he replied, "no, I was going to make a right turn and I looked at the car and at the time I was thinking about Wednesday, we were going to Ocean City." Klisenbauer testified that "I was turning right and, naturally, I was looking where I was going." He couldn't remember whether he saw Mrs. Herbert's brake light come on when she stopped to avoid the intruding vehicle.[2] Klisenbauer admitted that while he had a clear view of traffic approaching on Taylor Avenue from his left, he did not see the intruding car pass by the Herbert vehicle until after he had struck Mrs. Herbert in the rear.

Mrs. Herbert gave testimony which the jury could reasonably construe as meaning that she had been stopped for fifteen seconds in the middle of the intersection before Klisenbauer struck her in the rear.[3]

We think there was legally sufficient evidence before

---

2. There was evidence in the case that Mrs. Herbert's brake lights were functioning on the day of the accident.

3. Another interpretation of Mrs. Herbert's testimony was that the fifteen seconds covered the period between the time she first proceeded to enter the intersection to the time she was struck in the rear by Klisenbauer.

the jury which would have permitted it to find primary negligence on Klisenbauer's part constituting a proximate cause of the accident; consequently, we hold that the trial judge erred in directing a verdict in Klisenbauer's favor. When the evidence is viewed in a light most favorable to the Herberts (as we are required to do) we think it rationally inferable therefrom that Klisenbauer failed to keep his vehicle under proper control and failed to maintain a proper lookout. That he was generally inattentive to the traffic conditions immediately ahead of him is properly inferable from his own statement showing a preoccupation with making a right turn on Taylor Avenue without observing the Herbert vehicle which was directly in front of him blocking his path. While the evidence tended to show that Klisenbauer could not make a right turn until the Herbert vehicle was out of his way, he did not see the intruding vehicle prior to the collision, nor did he see Mrs. Herbert's brake light come on. Had Mrs. Herbert been stopped in the middle of the intersection for fifteen seconds before Klisenbauer struck her, as she testified, it could be inferred that Klisenbauer failed to observe what he should have observed, and that he failed to avoid the collision after the necessity for stopping should have been apparent to him had he exercised due care. *Compare Oliver v. Baltimore Transit Co.*, 247 Md. 625; *Edwards v. Chisolm*, 246 Md. 542.

The appellants make the further contention that the trial judge erred in refusing to permit Dr. S. Elliott Harris, Mrs. Herbert's treating physician, to express his opinion of the percentage of permanent disability sustained by her as a result of the accident.

The record discloses that Dr. Harris had treated Mrs. Herbert for several years after the accident, his last treatment being over three years from the date of the trial. He testified that Mrs. Herbert had suffered a permanent disability of the neck and spine as a result of the accident. After an objection was made and sustained to Dr. Harris stating his opinion of the extent of Mrs. Herbert's permanent disability in percentage terms, a proffer

was made by the Herberts that Dr. Harris would testify that Mrs. Herbert suffered a twenty percent permanent partial disability of the cervical spine; that Dr. Harris was familiar with Mrs. Herbert's occupation (housewife) and that he would be questioned, if permitted, in terms of "what this disability reflects from the standpoint of organic or functional loss." The trial judge rejected the proffer, primarily because of his stated belief that it was improper in personal injury litigation, as opposed to workmen's compensation cases, to permit a physician to state his opinion of the extent of disability in percentage terms.

A physician who, in addition to his medical knowledge, has familiarity with and understanding of the activities and occupation of his patient is permitted to express an opinion in personal injury cases as to the extent, in percentage terms, to which the anatomical disability will cause personal or economic disability. *See Straughan v. Tsouvalos,* 246 Md. 242; *Shivers v. Carnaggio,* 223 Md. 585. It is apparent that the Herberts were relying on this principle in their effort to place before the jury Dr. Harris's percentage estimate of permanent disability to Mrs. Herbert's cervical spine. It is equally apparent that the trial judge was not familiar with the principle or the cases from which it sprang. Whether Dr. Harris in fact had sufficient familiarity with his patient's activities and occupation to properly enable him to express an opinion was never determined; by summarily inhibiting the introduction of any such evidence, the court committed reversible error mandating the granting of a new trial.

Appellants also complain that the court improperly instructed the jury concerning the nature of the Unsatisfied Claim and Judgment Fund and the method of its financing. Specifically, the court instructed the jury, in accordance with the Fund's request, that if it found that the unidentified driver's negligence was a proximate cause of the accident, and a verdict was therefore to be returned against the Fund, then it should consider the

nature of the Fund, how it was created and maintained, and how charges were levied to finance it. The court then read to the jury a major portion of Article 66½, Section 151 — the statute pertaining to the creation and maintenance of the Fund. The Herberts excepted to the instruction on the ground that it was "entirely collateral to the issue of negligence because it would only be designed to, perhaps, elicit some sympathy or extraneous feeling on the part of the jury who could conceivably feel they are paying for these charges."

However well intentioned the instruction may be, we have serious reservations as to its propriety. The instruction went considerably beyond a mere identification of the Fund and of the circumstances which brought it to court. It not only detailed the means by which the Fund is financed, but covered the possibility of deficiency assessments in case of the Fund's insolvency. The instruction generally refers to payments, assessments, and insolvency and could possibly conjure up to the jury a picture of ultimate taxpayer obligation for the Fund's liabilities. Of course, to the extent that it would do so, it is wholly collateral to a determination of negligence *vel non,* and of the amount of damages properly recoverable therefor. It may be, as the Fund claims, that its purpose in requesting the instruction was to point out that general tax funds are not used to pay its liabilities; and that the instruction therefore redounds to the benefit of the plaintiff. While we find it difficult to believe that the Fund would insist upon an instruction detrimental to its own interests, in view of our reversal of the judgments for other reasons, we need not consider in this case whether the court committed reversible error in giving the instruction over appellants' objection.

> *Judgments reversed; case remanded for a new trial; costs to be paid equally by the appellees.*