ISABEL B. MOORE ET AL. *v.* GERDINE R. PRESNELL,
IND. AND AS PERSONAL REPRESENTATIVE OF THE
ESTATE OF HELEN E. PRESNELL

[No. 287, September Term, 1977.]

*Decided December 9, 1977.*

244

The cause was argued before GILBERT, C. J., and MORTON and COUCH, JJ.

*Robert C. Verderaime* and *A. Freeborn Brown,* with whom were *T. Carroll Brown, Verderaime & DuBois, P.A.* and *Brown, Brown & Lanahan* on the brief, for appellants.

*Robert E. Cadigan*, with whom were *Smith, Somerville & Case* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

This case demonstrates the truth of the old saw, "[t]here is a point, easily reached, where the simplest facts end in mystery. . . ." [1] The litigation had its onset on March 1, 1975, when an automobile operated by Mrs. Helen Presnell crossed over from the westbound lane of Maryland Route 22 into the eastbound lane, where it collided with a vehicle driven by one of the appellants, Nathan Moore. The collision resulted in the death of Mrs. Presnell sometime after the impact, and severe injury to Mr. Moore and the other two appellants, Isabel Moore and Mark Katz, who were passengers in the Moore car at the time of the incident.

"Now comes the mystery." [2] What sets this case apart from the voluminous annals of commonplace, albeit tragic, highway accidents is the inexplicable nature of the collision. An inspection by the State Police of Mrs. Presnell's battered car revealed no mechanical defects which would have caused or contributed to the happening. Eyewitnesses' versions varied in certain particulars, but seemed to agree unequivocally that Mrs. Presnell had been driving erratically immediately prior to the accident, and that she made no effort to avoid the impact. The witness who was following behind Mrs. Presnell just before her vehicle crossed the center line

---

1. Robert James Turnbull (January 1775 - June 15, 1833), attorney and publicist.

2. Henry Ward Beecher (1813-1887), *Last Words*, March 8, 1887.

and met its fate testified that he saw Mrs. Presnell's head fall to the right side, "just like she just passed out."

The explanation offered by appellee for Mrs. Presnell's actions was that she suffered a sudden and unexpected lapse of consciousness. To substantiate that theory, Mrs. Presnell's hospital records were put into evidence in order to show that the decedent had a history of cardiac problems, hypertension, and swelling of the feet. Mrs. Presnell's daughter testified that her mother had frequently complained of swelling of the feet and aching arms. Three vials of medication were found in the purse that the deceased had with her at the time of the motor vehicle collision. One vial contained "Aldomet," an antihypertensive agent, the second contained "Pyridium," an analgesic, and the third contained an unspecified drug.

Following presentation of the evidence in the Circuit Court for Harford County, Judge Edward D. Higinbothom denied both parties' motions for directed verdict and submitted the "mystery" to the jury. Those twelve tried and true citizens were instructed that the appellants had established a *prima facie* case of negligence on the part of Mrs. Presnell. The jury was further informed that the burden of proving by a preponderance of the evidence that Mrs. Presnell was justified in entering the lane of traffic flowing in the opposite direction rested squarely upon the appellee. Apparently, the jury felt that Mrs. Presnell's Personal Representative had met that burden inasmuch as they returned a verdict in favor of the defendant-appellee.

In their appeal to this Court, the appellants ask, "Was there legally sufficient evidence to justify the granting of an instruction that if the jury found the decedent was suddenly struck by an unexpected and unforeseeable illness which rendered it impossible for her to control her car, they were to find for the defendant?" [3]

---

3. The appellants also raised two (2) other questions, namely:

"2. Did the Court err in its failure to grant plaintiffs' motion for directed verdict?", and

"3. Did the Court abuse its discretion in failing to grant plaintiffs' request for a *voir dire* question which sought to elicit the jury's

According to the overwhelming weight of authority, where the driver of a motor vehicle suddenly and unforseeably becomes physically or mentally incapacitated, he is not liable for injury resulting from the operation of the vehicle while so incapacitated. *See, e.g., Shirks Motor Express v. Oxenham,* 204 Md. 626, 634, 106 A. 2d 46, 49 (1954); *Watts v. Smith,* 226 A. 2d 160, 162 (D.C. Ct. of App. 1967); *Pacific Employers Insurance Co. v. Morris,* 78 Ariz. 24, 275 P. 2d 389 (1954); *People v. Freeman,* 61 Cal. App. 2d 110, 142 P. 2d 435 (1943); *Cole v. Layrite Prods. Co.,* 439 F. 2d 958, 960 (9th Cir. 1971); *Freifield v. Hennessy,* 353 F. 2d 97, 98 (3rd Cir. 1965); Annot., 28 A.L.R.2d 12 (1952). An exception to the general rule exists where a person knows that he is suffering from an illness which will likely cause his loss of consciousness.[4] Annot., 28 A.L.R.2d 12, 40 (1952). Where, as here, a *prima facie* case of negligence has been established by the plaintiff, the burden of proof shifts to the defendant to demonstrate that a sudden illness or attack occurred, and that it could not have been anticipated. *Beahm v. Shortall,* 279 Md. 321, 340-41, 368 A. 2d 1005, 1006 (1977); *Cole v. Layrite Prods. Co., supra.*

---

preconceived dislike for a suit which sought damages for pain and suffering?"

In view of our disposition of the first issue, we need not consider the remaining matters.

4. *See* Annot., 28 A.L.R.2d 12, 23 (1952), where it is said:

"If the driver of the vehicle knew that he was subject to attacks in the course of which he was likely to lose consciousness, and an accident occurs because of the fact that the driver suffered a fainting spell, such loss of consciousness does not constitute a defense in an action brought by the injured person. Such foreseeability has been held to exist in cases where the driver suffered from epileptic seizures or from dizzy spells, where he knew from prior experience that he was liable to such disturbances. Of course, no fixed rule can be established to determine when or under what circumstances the driver must desist from driving a vehicle because of the danger of his losing consciousness, but it seems that the courts are rather lenient in this respect, and it can certainly not be stated as a general rule that a person who knows that he is suffering from a heart condition or another illness which may cause his loss of consciousness at some future time is automatically at fault if he drives an automobile and, while doing so, loses consciousness, thereby causing an accident." (Footnotes omitted.)

The rationale behind the defense of unanticipated unconsciousness is that the driver was suddenly deprived of his senses by "blacking out" so that he could not comprehend the nature and quality of his act, and thusly, is not responsible therefor. F. Harper & F. James, 2 *The Law of Torts* § 16.7 (1956); Annot., 28 A.L.R.2d 12 (1952).

> "He must have done that which he ought not to have done, or omitted that which he ought to have done, as a conscious being endowed with a will.... Nowhere in cases dealing with the subject of torts do we find the suggestion that a person should be held responsible for injuries inflicted during periods of unconsciousness." *Lobert v. Pack*, 337 Pa. 103, 107, 9 A. 2d 365, 367 (1939). (Citations omitted.)

The draftsmen of the Restatement of Torts concur with the prevailing theory and declare that "[i]f the actor is ill or otherwise physically disabled, the standard of conduct to which he must conform to avoid being negligent is that of a reasonable man under like disability." 2 *Restatement (Second) of Torts* § 283C (1965). The comments to Section 283C highlight the problem in the case of cardiac attacks as follows:

> "[A]n automobile driver who suddenly and quite unexpectedly suffers a heart attack does not become negligent when he loses control of his car and drives it in a manner which would otherwise be unreasonable...." [5] *Id.* at § 283C, Comment c.

In *Watts v. Smith, supra,* the District of Columbia Court of Appeals determined that "[o]ne who, while driving his automobile, is stricken by a sudden illness which he had no reason to expect and which rendered it impossible for him to control his car is not chargeable with negligence." 226 A. 2d at 162.

Appellee's burden in the trial court was twofold. First, appellee had to show loss of consciousness and second, that the loss of consciousness was unforeseen. There was, in the

---

5. *See also* n. 4, *supra.*

instant case, sufficient evidence of a lapse of consciousness to carry the case to the jury for its consideration. Appellee did not establish "beyond a reasonable doubt" that Mrs. Presnell suffered a sudden loss of consciousness, however, such is not required by Maryland law. It is enough that appellee's proof generated a jury issue, and that the jury was persuaded by a preponderance of the evidence of the validity thereof.

> "The appellee is not required, for purposes of meeting a motion for a directed verdict, to have proved its defense by showing the specific cause of the presumptively wrongful act, but need only adduce evidence sufficient to raise a fact issue for the jury." *Cole v. Layrite Prods. Co.,* 439 F. 2d at 960.

*See Rafferty v. Weimer,* 36 Md. App. 98, 373 A. 2d 64 (1977). Moreover, appellee was entitled to rely on circumstantial evidence and needed only to establish a reasonable certainty that the decedent was unconscious at the time of the accident. *Id.* at 102, 373 A. 2d at 67.

Appellee, as we have stated, successfully raised a jury question through the testimony of Leon Anderson, who, driving his automobile behind Mrs. Presnell's car, said that she, immediately prior to the impact, appeared as if she "just passed out." The evidence clearly established that Mrs. Presnell did not react, when confronted with an imminent collision, as a conscious person would. She made no attempt to avert the accident, and there was no visible braking action.

The medical history of Mrs. Presnell revealed that she was not an unlikely candidate for sudden lapses of consciousness. She had a history of cardiovascular disease and hypertension that could have caused her to "black out." Examination of the contents of her purse, as we have seen, disclosed three vials of medicine, one of which contained "Aldomet." [6] The only

---

6. Aldomet is a commercial name for the chemical compound, Methyldopa, an antihypertensive agent. *Modern Drug Encyclopedia & Therapeutic Index* 490 (12th ed. 1973). Following oral administration, Methyldopa's effects become apparent within four (4) to six (6) hours and linger for eight (8) to twelve (12) hours. *Id.* The drug can cause a variety of adverse reactions,

medical testimony with respect to "Aldomet" was that it was "a blood pressure medicine." That evidence, standing alone, as it did, was obviously insufficient in the minds of the jurors to outweigh the theory of the sudden, unexpected loss of consciousness.

Mrs. Presnell had no apparent history of fainting spells, nor does the fact that she was receiving medication for hypertension make her loss of consciousness foreseeable. Annot., 28 A.L.R.2d 12, 23 (1952).[7]

In sum, we think the evidence of the sudden, unexpected loss of consciousness was sufficient to entitle the jury to find as a fact that the automobile collision was the result of such a loss of consciousness, and that Mrs. Presnell's estate was not liable to the appellants.

*Judgment affirmed.*
*Costs to be paid by appellants.*

---

among which are sedation, headache, dizziness, asthenia (want of strength), mental depression, light-headedness, and symptoms associated with reduction of blood pressure and cerebrovascular insufficiency. *Id.; The Merck Index* 684 (8th ed. 1968). Clearly, had the jury been advised of the nature and effect of the medication, it would not have been unreasonable for it to conclude that Mrs. Presnell passed out prior to the accident.

7. *See* n. 4, *supra.*