REPORTED

IN THE COURT OF SPECIAL APPEALS
OF MARYLAND

No. 0849

September Term, 2013

GLEEN COOPER

v.

RICHARD SINGLETON

Eyler, Deborah S.,
Woodward,
Moylan, Charles E., Jr.
 (Retired, Specially Assigned),

JJ.

Opinion by Moylan, J.

Filed: June 26, 2014

Harvard Law School Professor Edmund M. Morgan, one of the legendary titans of the law of presumptions, said of the subject as early as 1937:

> Every writer of sufficient intelligence to appreciate the difficulties of the subject-matter has approached the topic of presumptions with a sense of hopelessness and has left it with a feeling of despair.[1]

The first of the early titans was James Bradley Thayer who, even before the turn of the 20th Century, had observed:

> [T]he numberless propositions figuring in our cases under the name of presumptions, are quite too heterogeneous and noncomparable in kind, and quite too loosely conceived of and expressed, to be used or reasoned about without much circumspection.[2]

Dean Charles McCormick, another of the early Olympians, added to the diagnosis:

> One ventures the assertion that "presumption" is the slipperiest member of the family of legal terms, except its first cousin, "burden of proof."[3]

Indeed, the virus that infects the present case is the undifferentiated use of the term "burden of proof," as the appellant proffers conclusions about the "burden of persuasion" from premises dealing only with the "burden of production." The term remains as slippery as ever.

## A Vehicular Domino Effect

The appellant, Gleen Cooper (hereinafter the "plaintiff"), sued the appellee, Richard Singleton (the "defendant"), for damages incurred as a result of the defendant's allegedly

---

[1] Morgan, "Presumptions," 12 <u>Wash. L. Rev.</u> 255, 255 (1937).

[2] Thayer, <u>A Preliminary Treatise on Evidence at the Common Law</u> 351 (1898).

[3] 2 <u>McCormick on Evidence</u> § 342, at 675 (Kenneth S. Brown, ed., 7th ed. 2013).

negligent driving of an automobile. The six-car collision giving rise to this action occurred on June 28, 2010, at the intersection of Great Seneca Highway and Queenstown Lane in Montgomery County. Involved was a chain reaction. Four cars had come to a stop, one behind the other, at a red light controlling the intersection, when a fifth car, driven by the defendant, went out of control and struck the rear end of the fourth car in the line. That fourth car was pushed forward into the rear end of the third car. That third car, in turn, was pushed forward into the second car, which was that being driven by the plaintiff. The plaintiff's car, in its turn, was then pushed forward into the first car in the line.[4] For purposes of simplifying the analysis of this case, involving only one of the plaintiffs and the single defendant, it will be convenient to factor out the other dominos and to speak simply of the defendant's car having rear-ended the plaintiff's car. The analysis will come out exactly the same way.

On February 23, 2012, the plaintiff filed suit against the defendant in the Circuit Court for Montgomery County, alleging negligent driving. Following a three-day trial before a jury, presided over by Judge Terrance McGann, the jury verdict was that the defendant had not been negligent. The present appeal followed.

## The Defense of Sudden Incapacity

---

[4]The sixth car involved was stopped in a parallel lane. The defendant's car ultimately slid across its lane and into it.

At trial, the defendant presented the defense of sudden incapacity. In Moore v. Presnell, 38 Md. App. 243, 246-47, 379 A.2d 1246 (1977), cert. denied, 282 Md. 736 (1978), Chief Judge Gilbert described that theory of defense:

> According to the overwhelming weight of authority, where the driver of a motor vehicle suddenly and unforeseeably becomes physically or mentally incapacitated, he is not liable for injury resulting from the operation of the vehicle while so incapacitated. An exception to the general rule exists where a person knows that he is suffering from an illness which will likely cause his loss of consciousness. Where, as here, a prima facie case of negligence has been established by the plaintiff, the burden of proof shifts to the defendant to demonstrate that a sudden illness or attack occurred, and that it could not have been anticipated.

> The rationale behind the defense of unanticipated unconsciousness is that the driver was suddenly deprived of his senses by "blacking out" so that he could not comprehend the nature and quality of his act, and thusly, is not responsible therefor.

(Emphasis supplied).

With respect to the proof of sudden incapacity, this Court's opinion, 38 Md. App. at 248-49, was also informative:

> Appellee, as we have stated, successfully raised a jury question through the testimony of Leon Anderson, who, driving his automobile behind Mrs. Presnell's car, said that she, immediately prior to the impact, appeared as if she "just passed out." The evidence clearly established that Mrs. Presnell did not react, when confronted with an imminent collision, as a conscious person would. She made no attempt to avert the accident, and there was no visible braking action.

> The medical history of Mrs. Presnell revealed that she was not an unlikely candidate for sudden lapses of consciousness. She had a history of cardiovascular disease and hypertension that could have caused her to "black out." Examination of the contents of her purse, as we have seen, disclosed three vials of medicine, one of which contained "Aldomet." The only medical

testimony with respect to "Aldomet" was that it was "a blood pressure medicine." That evidence, standing alone, as it did, was obviously insufficient in the minds of the jurors to outweigh the theory of the sudden, unexpected loss of consciousness.

Mrs. Presnell had no apparent history of fainting spells, nor does the fact that she was receiving medication for hypertension make her loss of consciousness foreseeable.

In sum, we think <u>the evidence of the sudden, unexpected loss of consciousness was sufficient to entitle the jury to find as a fact that the automobile collision was the result of such a loss of consciousness, and that Mrs. Presnell's estate was not liable to the appellants.</u>

(Emphasis supplied).

The Maryland Pattern Jury Instruction-Civil 18:9 also explains the sudden incapacity

defense:

A person has the duty to take reasonable actions to be sure that he or she can safely drive a motor vehicle. A failure to do so that results in a motor vehicle accident is evidence of negligence.

However, <u>a person may defend by showing that there was a sudden and unforeseen incapacity that rendered him or her unable to avoid or prevent the accident</u> causing the injury. Unforeseen incapacity is one that a reasonable person would not have any reason to anticipate.

(Emphasis supplied).

The defendant in this case presented a formidable and detailed case of sudden

incapacity. The incapacity was a grand mal seizure. Dr. David M. Katz, the defendant's

treating neurologist, testified by video deposition <u>de bene esse</u>. Dr. Katz has been treating

the defendant since the late 1990s. From at least that time through the date of the accident,

the defendant had been subject to a condition that made him potentially vulnerable to grand

- 4 -

mal seizures. The defendant's last known seizure before the accident in the present case was in 2004, when a gastrointestinal illness accompanied by vomiting and diarrhea resulted in a temporary reduction of the blood levels of his prescribed anti-seizure medication. Since that incident in 2004, the defendant's seizure condition had been well controlled by his prescribed medication.

Dr. Katz testified that the defendant has been consistently in compliance with the doctor's orders. During every medical visit from 2004 through 2010, Dr. Katz determined that the defendant was able safely to operate a motor vehicle, and on each such occasion Dr. Katz cleared the defendant to do so. The last such visit was in April of 2010, two months before the accident. Dr. Katz gave his considered medical opinion that in spite of the defendant's history of a very well controlled seizure disorder, the defendant had a breakthrough seizure on June 28, 2010, which could not have been anticipated and which rendered the defendant suddenly and unexpectedly incapacitated and unable to operate his motor vehicle.

Dr. Katz's opinion was factually supported by the testimony of 1) the defendant's wife, Valerie Singleton; 2) the defendant's stepdaughter, Nichol May Shannon; and 3) the defendant himself. Although the plaintiff contested the defendant's sudden incapacity defense, he offered neither testimony nor other evidence to negate it factually.

## A Presumption As Persuasive Evidence

To prove the defendant's negligence, the plaintiff relied exclusively on what he contends should be the probative force of an alleged presumption of negligence, as he would have had it communicated to the jury by a requested non-standard jury instruction. At the end of the case, Judge McGann gave standard jury instructions. He explained that the burden was on the plaintiff to persuade the jury of the defendant's negligence by a preponderance of the evidence. He explained that the defendant was offering the defense of sudden incapacity and that the defendant had the burden of persuading the jury of the existence of that defense by a preponderance of the evidence. The defendant and the plaintiff each asked for an additional non-standard instruction. Judge McGann declined to give either.

Although the non-standard instruction that the plaintiff requested is only peripheral to the plaintiff's precise appellate contention, it has some bearing on the discussion of the actual contention. The additional instruction that the plaintiff asked for was the following, taken essentially verbatim from <u>Andrade v. Housein</u>, 147 Md. App. 617, 623, 810 A.2d 494 (2002):

> <u>An evidentiary presumption of negligence arises where a motor vehicle is lawfully stopped on a highway</u> awaiting for traffic to clear before an intersecting highway <u>and that vehicle is suddenly struck from behind by another vehicle</u>, resulting in personal injuries and property damage to the driver and the front vehicle. From that presumption, a trier of fact may reasonably infer negligence on the part of the driver of the following vehicle.
>
> The presumption, however, is rebuttable. The procedural consequences, once a <u>prima facie</u> case is established, require that the person against whom the

presumption is directed assume the burden of going forward with the evidence, but <u>the burden of persuasion remains with the plaintiff.</u>

(Emphasis supplied).

## A Single and Precise Contention

The plaintiff framed his contention with admirable precision. It is:

**The Trial Judge Erred by Improperly Instructing the Jury on the Parties' Respective Burdens of Proof.**

Before wandering too far into the labyrinth of presumption law, it is prudent to note what is not contended and what, therefore, this case is not about. It is not about the failure to give the requested non-standard instruction <u>per se</u>. The plaintiff's references to the requested instruction are offered in support of his argument that Judge McGann misallocated to the parties their proper burdens of persuasion. The requested instruction represents, according to the plaintiff, the right allocation as opposed to the allegedly wrong allocation that was actually given. The case, moreover, is not about the failure to inform the jury about the existence of a presumption of negligence. The contention deals with the instruction that was given, not with the requested instruction that was not given. The contention was not about how to persuade the jury of the defendant's negligence. It was about the alleged error of not telling the jurors that the burden was on the defendant to persuade them of his non-negligence.

## The Standard of Review

As we undertake our review of Judge McGann's allocation of the respective burdens, it behooves us to keep the standard of review in the front of the mind. As Judge Adkins wrote for the Court of Appeals in <u>CSX Transportation, Inc. v. Pitts</u>, 430 Md. 431, 458, 61 A.3d 767 (2013):

> We review a trial judge's decision whether to give a jury instruction under the abuse of discretion standard. Moreover, <u>we will overturn a jury verdict and grant a new trial based on such an error only if it rises to the level of prejudicial error.</u>

(Emphasis supplied). See also <u>Conyers v. State</u>, 354 Md. 132, 177, 729 A.2d 910 (1999) ("The trial court committed no abuse of discretion.").

An aspect of showing reversible error in a civil jury instruction, moreover, is the requirement that the complaining party was actually prejudiced by the allegedly erroneous instruction. As the Court of Appeals explained in <u>Barksdale v. Wilkowsky</u>, 419 Md. 649, 662, 20 A.3d 765 (2011):

> We have been consistent, though, in stating that the "focus of our inquiry is on <u>the probability, not the possibility, of prejudice.</u>" Thus, the general rule is that <u>a complainant who has proved error must show more than that prejudice was possible; she must show instead that it was probable.</u>

(Emphasis supplied). Our concerns, therefore, are with the clear abuse of discretion and, should there have been such an abuse, with resulting prejudice.

### The Danger of Abstract Propositions

As the moment approached for Judge McGann to instruct the jury, both the plaintiff and the defendant were keenly sensitive to whether their respective bodies of proof might

qualify for a supplemental boost from a favorable allocation of the burden of persuasion. The defendant initially sought a non-standard instruction to the effect that "the mere happening of an accident creates no presumption of negligence on the part of the defendant." The plaintiff, in his turn, sought the diametrically opposite non-standard instruction to the effect that "when a lawfully stopped vehicle is rear-ended by another vehicle, there is a presumption of negligence on the part of the following driver." Judge McGann granted neither request.

His decision not to tilt the scales either way may have reflected the wisdom of Judge Rodowsky in <u>Ristaino v. Flannery</u>, 317 Md. 452, 454, 564 A.2d 790 (1989):

> We granted certiorari to consider the following question:
>
>> "<u>Is it reversible error to instruct the jury that the mere happening of the accident creates no presumption of negligence</u> on the part of the defendant where the manner in which the accident happened does indeed create a rebuttable presumption of negligence?"
>
> As explained below, <u>our forthright answer is, "It all depends."</u>

(Emphasis supplied).

The lesson is that the judge's decision either to recognize a presumption or to forego the presumption "all depends" on the facts of the case. A danger may lie in taking general statements of law and extracting from them an abstract proposition. <u>Ristaino v. Flannery</u>, 317 Md. at 459, elaborated on the danger of building syllogisms out of abstract propositions:

> <u>As an abstract proposition, the position taken by Defendant in this case is correct. The mere happening of an accident</u>, even with resulting harm, e.g.,

- 9 -

that the plaintiff slipped and fell on the land occupier's premises, or that two motor vehicles collided, <u>considered in a factual vacuum</u> devoid of the surrounding facts and circumstances, <u>does not involve any proof of negligence.</u>

<u>Jurors, however, are not generally given to conceptualizing about accidents in the abstract.</u> When the trial judge instructs, jurors rightfully assume that the judge is talking about the case before them and is stating the law to be applied by the jurors, unless the instruction properly explains otherwise.

(Emphasis supplied).

## Andrade v. Housein

In our judgment, the plaintiff is attempting to extract just such an abstract proposition from <u>Andrade v. Housein</u>, 147 Md. App. 617, 810 A.2d 494 (2002), the opinion on which he relies almost exclusively on the present appeal. It is an opinion, therefore, demanding very close analysis. On close analysis, it turns out to be a very slender reed on which the plaintiff relies, in no less than three regards.

## 1. It Would Have Been An Inartfully Pedantic Instruction

The plaintiff's requested non-standard jury instruction was taken essentially verbatim from <u>Andrade</u>, 147 Md. App. at 623. <u>Andrade</u>, however, was not discussing jury instructions. It was not even a jury case. It was a statement of controlling law, concerned with the correctness of a trial judge's legal ruling. Such expositions of the law are aimed at trained lawyers and judges. A statement of law in a judicial opinion, however, is not necessarily appropriate fodder for jury consideration, even when quoted with punctilious accuracy.

- 10 -

Judge McGann recognized this dichotomy between what is appropriate for judges and lawyers, on the one hand, and what is appropriate for jurors, on the other hand. In rejecting the requested non-standard instruction, he observed:

> I'm [not] going to expect a jury to understand that theory. This is for lawyers. This is for judges. I'm not going to give that instruction. <u>There's no way they're going to understand that</u> ... <u>I don't dispute it's the law.</u> It's a question whether I instruct. Instructions are to help the jury.

(Emphasis supplied).

In concluding that such terms as "a true evidentiary presumption," "a reasonable inference," "a rebuttable presumption," "a <u>prima</u> <u>facie</u> case," "the burden of going forward with the evidence," and "the burden of persuasion remaining with the plaintiff" would confuse the jurors more than they would assist them, we could not say that Judge McGann abused his discretion, if this issue were squarely before us. It may or may not be. Although, in his brief, the plaintiff refers repeatedly to his requested non-standard instruction that was not given, that instruction is offered simply in support of the plaintiff's argument that the instruction affirmatively given – that, on the issue of negligence, the burden of persuasion was on the plaintiff – was erroneous. The thrust of the plaintiff's challenge is to what Judge McGann did do, not to what he did not do. In any event, Judge McGann did not abuse his discretion in declining to give the requested supplemental instruction based on <u>Andrade v. Housein</u>. A committee drafting model jury instructions would unquestionably have said that the requested instruction in this case, even if correct, would have to be rewritten in much simpler language.

- 11 -

## 2.  The Logical Fallacy of the Undistributed Middle

There is a second respect in which the plaintiff's reliance on <u>Andrade</u> is questionable. <u>Andrade</u> is the only case (or academic authority) cited for the plaintiff's core thesis that "a true evidentiary presumption of negligence arises where a motor vehicle is lawfully stopped on a highway awaiting for traffic to clear before entering an intersecting highway and that vehicle is suddenly struck from behind by another vehicle." 147 Md. App. at 623.  Standing alone, that is an abstract proposition.  What does have precedential value, however, are not the mere words of <u>Andrade</u>, but the actual holding of <u>Andrade</u>.  That holding, of course, can only be distilled from what was necessarily decided.

The procedural context of <u>Andrade</u> was highly unusual.  The plaintiff's vehicle in that case was struck from behind.  The defendant (the driver of the striking vehicle) did not appear at trial and no defense whatsoever was presented.  Defense counsel nonetheless moved for a directed verdict at the end of the plaintiff's case.  The trial judge initially granted the motion but, after further argument, "reserved on the judgment."  When the defense presented no evidence, the judge granted the motion.  The holding of <u>Andrade</u> was that the fact of being struck from behind was enough in and of itself to save the plaintiff's case against the defendant from a directed verdict.  The trial judge was in error, as a matter of law, in directing the verdict against Andrade.  What the opinion said about a presumption of negligence arising from the rear-ending, however, was said in the unusual circumstance of an absolute absence of any possible explanation for the rear-ending.  The effect of

Andrade, as opposed to the words of Andrade, was that the fact of the rear-end collision was enough to satisfy Andrade's burden of production and to prevent judgment being entered against him as a matter of law. What Andrade did do was to give the plaintiff the benefit of a permitted inference of negligence, which was enough to create a factfinding issue and to save the plaintiff from an adverse judgment against him as a matter of law. The academic authorities are unsettled as to whether such a permitted inference of fact, although unquestionably present, truly rates the dignity of being called a "presumption." Nothing was said in Andrade about any burden of persuasion. No such issue was before the Court.

There have been several Maryland cases, by interesting contrast, where a stopped automobile was rear-ended by another without any such presumption of negligence arising. In Brehm v. Lorenz, 206 Md. 500, 504, 112 A.2d 475 (1955), the plaintiff was injured "when an automobile in which Mrs. Brehm was sitting, and which had momentarily come to a stop on Reisterstown Road in Baltimore, was struck in the rear by an automobile driven by defendant." No presumption of negligence arose in that case. To be sure, the plaintiff's vehicle had once been stopped, briefly resumed its forward movement, and then for a legitimate reason came to a second and sudden stop before being struck by the vehicle following it. Under the plaintiff's theory in the present case, a presumption of the defendant's negligence could have arisen with the defendant then assuming the burden of production of establishing the plaintiff's sudden stop as the actual reason for the subsequent collision. The analysis by the Court of Appeals, however, did not follow that route. It

- 13 -

simply looked at the totality of circumstances without breaking the analysis down into distinct procedural steps.

In Herbert v. Klisenbauer, 12 Md. App. 135, 277 A.2d 625 (1971), the plaintiff's car came to a sudden stop and was then rear-ended by the car following behind it. "[T]his case shares the common characteristic of an intruding vehicle violating the rules of the road, causing the forward of two cars traveling in the same direction to come to an abrupt stop, and thereafter being struck in the rear by the following vehicle." Id. at 138-39. The opinion of this Court could also have assumed negligence on the part of the defendant with the defendant then satisfying his burden of production by offering the plaintiff's sudden stop as the reason for the collision. It did not. The defendant was simply found to be non-negligent as a matter of fact and a presumption did not even enter into the discussion.

The difference between those two cases and Andrade is that in Andrade there was an absolute vacuum with respect to a possible explanation for the collision. It is conceivable, therefore, that the presumption of negligence Andrade mentions only arises in such a factual vacuum. The defendants in those two cases were not required to rebut a presumption of negligence. It may well be that the evidence of sudden incapacity in the present case is more akin to the evidence of sudden stops in Brehm v. Lorenz and Herbert v. Klisenbauer than it is to the total evidentiary vacuum of Andrade. In Andrade, the presumption was, of course, necessary to save a plaintiff who deserved to get to the factfinder from suffering a

- 14 -

directed verdict against him.  In the present case, the plaintiff was exposed to no such vulnerability.

Of present pertinence is the real possibility that the presumption Andrade discusses may be a narrow one, one constrained by the unusual facts of the Andrade context, and may not represent nearly so broad and sweeping a proposition of law as the plaintiff here reads it to be.  Although ideally the words should reflect the deeds (and nothing more), an actual holding is what a decision necessarily does and not everything that the opinion says.  In the last analysis, the deeds control and not the words.  Holdings, unlike contracts, do not depend upon the words used.

Andrade did nothing with respect to the burden of persuasion, an issue that was not before the Court.  The only burden of proof that Andrade was even thinking about was the burden of production, and not the burden of persuasion, no matter how carelessly generic its language may have been. The words of Andrade, to be sure, are as the plaintiff quotes them, but the words are uttered in a particular context.  As Edmund Morgan admonished us in 1937, we must be careful not to "emphasize phraseology at the expense of substance." "Presumptions," 12 Wash. L. Rev. at 256.  Andrade presents the age-old legal riddle of how to read an opinion when what the opinion says is broader than what the opinion does.

When a generic term means two different things and only the generic term is argued, it is not always apparent when the sub-surface meaning has shifted in the middle of the argument.  The failure to particularize allows a glib advocate to cite cases as ostensible

authority for propositions the cases never decided. This linguistic sleight-of-hand is a perennial vexation in appellate litigation. In logical terms, any effort to deduce a conclusion about one part of the burden of proof from what an opinion says about a different part of the burden of proof would constitute the logical Fallacy of the Undistributed Middle.[5]

## 3. The Burden of Ultimate Persuasion on Negligence Does Not Shift

Thirdly and finally, the requested language from Andrade would not actually have helped the plaintiff's cause. At this point in our analysis, we will assume, purely arguendo, that Andrade announced a rebuttable evidentiary presumption that if a legitimately stopped vehicle is struck in the rear by a following vehicle, the driver of the following vehicle was negligent. The question before us in this case remains that of what are the procedural consequences that would follow from the application of that presumption of negligence.

The jury, of course, found that the defendant was not negligent. The plaintiff's sole argument is that a proper jury instruction, as opposed to the one that was actually given, would have made it more difficult for the jury to have reached such a verdict. The plaintiff contends that the presumption of negligence should have shifted the burden of ultimate persuasion on the issue of negligence from the plaintiff to the defendant. The plaintiff contends that he should have been relieved of a plaintiff's normal burden of having to prove negligence by a preponderance of the evidence and that a countervailing burden of ultimate persuasion should have been allocated to the defendant to prove non-negligence.

---

[5]See Douglas Lind, Logic and Legal Reasoning 130-31 (2001).

That this is the single thrust of the plaintiff's contention is indisputable. In his brief, the plaintiff states:

> The effect of a plaintiff introducing evidence of such an accident (rear-end collision, with the lead car at a stop) has the effect of <u>shifting the burden on the issue of negligence from the Plaintiff to the Defendant.</u>

(Emphasis supplied). Further along in his argument, the plaintiff repeats:

> The jury was not instructed that <u>the burden of proof had shifted to Singleton.</u>

(Emphasis supplied).

To that point, the flaw in the plaintiff's reasoning results from his failure to distinguish between the two very different meanings of "burden of proof" or simply "burden." There is first the "burden of production," sometimes referred to as the "burden of going forward," which a presumption of negligence will, indeed, shift from a plaintiff to a defendant. There is then, by dramatic contrast, the "burden of persuasion" on negligence, which a presumption of negligence will never shift from the plaintiff to the defendant. This case concerns only the latter, the burden of persuasion. The plaintiff, however, constructs his argument by citing language dealing only with the former, the burden of production. This is easy to do, of course, because the plaintiff can glibly pull out of context numberless uses of the disembodied term "burden," with no particularization as to which type of burden is being discussed. Even in the same case, disembodied "burdens" may point in diametrically opposite directions.

The plaintiff's next assertion, however, leaves no doubt that what he believes should be shifted is the burden of ultimate persuasion on the issue of negligence.

> Under Maryland law, <u>Cooper did not have the burden of proving</u> by a preponderance of the evidence <u>that Singleton was negligent.</u> Instead, under Maryland law, <u>Singleton bore the burden of proving by a preponderance of the evidence that Singleton was not negligent</u> under the two parts of the [<u>Moore v. Presnell</u>, 38 Md. App. 243, 379 A.2d 1246 (1977),] test.

(Emphasis supplied).

The plaintiff wanted the burden of ultimate persuasion indisputably cast on the defendant, requiring him to prove non-negligence or non-liability.

> Accordingly, the jury was never allowed to hear that <u>burden of proof on the issue of liability solely rested with Singleton.</u> ...

> ... In fact, <u>the jury was instructed that Cooper had the burden of proof on the issue of liability</u>, with Singleton having his own burden for the affirmative defense.

(Emphasis supplied).

The plaintiff consistently asserted that Judge McGann committed reversible error by failing to shift the burden of ultimate persuasion from the plaintiff to the defendant.

> The jury instructions did not adequately explain that <u>the burden on the issue of liability and negligence had shifted to Singleton.</u> As the jury had not been properly instructed regarding the burden of proof on the issue of liability, <u>Cooper was clearly prejudiced as the jury was instructed that Cooper bore a burden of proof that he did not bear.</u>

(Emphasis supplied).

Ironically, not only did Judge McGann properly allocate the burden of ultimate persuasion on the issue of negligence to the plaintiff, but he did so in precise accord with

the directive of <u>Andrade v. Housein</u>.  With respect to the procedural consequences of a presumption of negligence, <u>Andrade v. Housein</u>, 147 Md. App. at 623, and the verbatim requested jury instruction clearly stated:

> The procedural consequences, once a <u>prima</u> <u>facie</u> case is established, require that the person against whom the presumption is directed assume the burden of going forward with the evidence, <u>but the burden of persuasion remains with the plaintiff.</u>

(Emphasis supplied).

The burden of persuasion remains with the plaintiff!  In <u>Andrade</u>, the plaintiff enjoyed the presumption that the defendant had been negligent.  That presumption satisfied Andrade's initial burden of production and should have protected him from the risk of an adverse judgment, but did not.  That is why he won his appeal.  The presumption, moreover, cast upon the defendant in that case (Housein) the burden of production of offering some explanation for the collision.  The defendant failed to meet that burden.  Andrade, however, was not thereby entitled to a judgment in his favor, as a matter of law.  The burden of ultimate persuasion on negligence had not shifted to the defendant but remained with the plaintiff.  Following the reversal, the case was simply remanded to the circuit court for a new trial, with the reminder, 147 Md. App. at 623 n.3, that

> <u>The burden of proof in these cases remains with the plaintiff</u> [Andrade].

(Emphasis supplied).

In the case now before us, we are giving the plaintiff, <u>arguendo</u>, the benefit of a rebuttable evidentiary presumption of negligence on the part of the defendant.  That

- 19 -

presumption satisfied the plaintiff's initial burden of production and he thereby suffered no risk of a directed verdict against him. Even without using the language of presumptions, the basic fact of the rear-end collision would in and of itself have given the plaintiff the benefit of a permitted inference of the defendant's negligence, thereby protecting the plaintiff from a directed verdict against him. That presumption, moreover, shifted to the defendant the burden of production, to wit, that of going forward by way of offering some plausible explanation for the collision. In this case, of course, the defendant produced a very strong case of sudden incapacity. The burden of persuasion with respect to convincing the jury of that sudden incapacity was properly allocated to the defendant. On that sub-issue, the defendant bore the risk of non-persuasion. The burden of ultimately persuading the jury that the defendant was negligent, however, remained allocated to the plaintiff.

Non-persuasion of sudden incapacity, however, is not ipso facto persuasion of negligence. Albeit closely related, they are not mirror images of each other. This is the Achilles heel in the plaintiff's reasoning. If the defendant, as in Andrade, had failed to offer any explanation, to wit, had failed to meet his burden of production, the plaintiff would still not have been entitled, as a matter of law, to a directed verdict in his favor. He might have enjoyed, if he even wished for the subject to be mentioned, a peremptory instruction to the effect that there was no sudden incapacity. He would still have carried the burden of ultimate persuasion on the broader issue of negligence. Although under those circumstances

persuading the jury of the defendant's negligence should not have been difficult, the burden

would still have remained on him so to persuade.

The plaintiff suffered no prejudice from Judge McGann's disinclination to give the

requested supplemental instruction based on Andrade v. Housein. Indeed, had Judge

McGann given the instruction, it could have been fatal to the plaintiff's cause. It would have

told the jury that the burden of ultimate persuasion, that the plaintiff wanted to be switched

to the defendant, "remains with the plaintiff." Silence on the subject, from the plaintiff's

point of view, was the exact opposite of prejudice. It was a windfall.

### Maryland Law on Presumptions in Civil Cases

We hold as we do in this case, however, on authority far broader than Andrade v.

Housein. Effective July 1, 1994, the Court of Appeals adopted for the first time in Maryland

a code of evidence, what is now Title 5 of the Maryland Rules of Practice and Procedure.

It is Rule 5-301 that deals with "Presumptions in Civil Actions." Subsection (a) provides:

> (a) **Effect**. Unless otherwise provided by statute or by these rules, <u>in all civil actions a presumption imposes on the party against whom it is directed the burden of producing evidence to rebut the presumption.</u> If that party introduces evidence tending to disprove the presumed fact, the presumption will retain the effect of creating a question to be decided by the trier of fact unless the court concludes that such evidence is legally insufficient or is so conclusive that it rebuts the presumption as a matter of law.

(Emphasis supplied).

The "committee note" accompanying Rule 5-301 elaborated on the nature of the rule.

- 21 -

Section (a) of the Rule is intended to codify the approach to presumptions explicated in Grier v. Rosenberg, 213 Md. 248 (1957).  The treatment of presumptions under this Rule is thus distinguishable from the so-called "Thayer-Wigmore bursting bubble" approach of Federal Rule 301 and the "Morgan-Type" presumption embodied by Uniform Rule 301.  This Rule applies only to rebuttable evidentiary presumptions that have the effect of shifting the burden of production.  It does not apply to (1) evidence that gives rise only to a permissible inference, which has the effect only of meeting the proponent's burden of production but not shifting that burden to the opposing party, (2) irrebuttable presumptions, which are rules of substantive law, or (3) rebuttable presumptions that are merely restatements of the allocation of the ultimate burden of persuasion to the opposing party, such as the presumption of innocence in a criminal case.

(Emphasis supplied).

Professor Alan D. Hornstein of the University of Maryland School of Law was the Special Co-Reporter and Special Consultant of the Evidence Subcommittee of the Maryland Rules Committee.  Following the 1994 promulgation of the new rules, he authored Alan D. Hornstein, "The New Maryland Rules of Evidence: Survey, Analysis and Critique," 54 Md. L. Rev. 1032 (1995).  With respect to Rule 5-301, he explained that although a civil presumption may impose on the party against whom the presumption is offered a burden of production to rebut the presumption, it does not shift to that opposing party the burden of persuasion.

Ultimately, the rule as adopted codifies Maryland law as expounded in Grier v. Rosenberg.  Under Rule 5-301, presumptions do not affect the burden of persuasion.  A presumption merely satisfies the burden of production on the fact presumed and, in the absence of rebutting evidence, may satisfy the burden of persuasion.  If there is rebutting evidence, the presumption retains only enough vitality to create a jury question on the issue, and the jury is instructed on the presumption.

(Emphasis supplied).

In Joseph F. Murphy, Jr., <u>Maryland Evidence Handbook</u>, § 1001(D), "'True' Presumptions," at 419 (3d ed. 1999), Judge Murphy (quoting from <u>State Farm Mut. Auto. Ins. Co. v. Martin Marietta Corp.</u>, 105 Md. App. 1, 9-10 n.3, 657 A.2d 1183 (1995)) explained that a presumption in a Maryland civil case is neither a classic "Thayer-Wigmore bursting bubble" presumption nor a "Morgan-Type" presumption, but a modified procedural device lying between those two extremes.

> [R]ule 5-301 does not take an all or nothing approach to presumptions. The rule recognizes that it would be unwise to transform every evidentiary presumption into either a "Thayer-Wigmore bursting bubble" presumption (that becomes a permitted inference once the trier of fact receives evidence that the presumed fact is untrue) or a "Morgan-Type" presumption that shifts both the burden of production and the burden of persuasion.

(Emphasis supplied). It is the "Morgan-Type" variety of presumption, which Maryland has expressly not adopted, that would shift to the opposing party a burden of ultimate persuasion, the thing the plaintiff is urging upon us in the present case.

In 5 Lynn McLain, <u>Maryland Evidence</u>, § 301:2, "Effect of evidentiary rebuttable presumptions in civil cases," at 423 (3d ed. 2013), Professor McLain described Maryland Rule 5-301 as shifting to the opposing party the burden of production with no mention being made of any shift in the burden of persuasion.

> **a. Effect of Md. Rule 5-301**. In civil cases, upon admission of evidence sufficient to support a finding of the "basic fact," presumptions covered by Md. Rule 5-301(a) have the initial effect of shifting to the opposing party the burden of production of evidence as to the nonexistence of the "presumed fact."

- 23 -

(Emphasis supplied).

As the committee note from the Maryland Rules Committee made clear, Rule 5-301(a) is intended "to codify the approach to presumptions explicated in <u>Grier v. Rosenberg</u>," 213 Md. 248, 131 A.2d 737 (1957). In <u>Grier</u>, the rebuttable presumption under analysis was one that the driver of an automobile is presumed to be the agent, servant and/or employee of the owner of the automobile and that the driver was operating the automobile within the scope of his employment. 213 Md. at 252-53. The issue in <u>Grier</u> was not the existence of the presumption but its procedural impact.

In <u>Grier</u> it was never suggested that the burden of ultimate persuasion on the issue of negligence would ever be shifted from the beneficiary of the presumption to the party against whom the presumption was directed. <u>Grier</u> concerned only the lesser shifting of a burden of production. With respect to it, the first possibility after a burden of production shifts is that the party to whom it has shifted will offer nothing in response. <u>Grier</u> makes it clear what happens in such a case.

> In cases of this nature, after the plaintiff has offered proof of the ownership of the automobile in the defendant, <u>if the defendant does not offer any evidence</u> on the issue of agency, <u>the Court should instruct the jury that if they find as a fact that the defendant owned the car, they must find that he is responsible for the negligence (if any) of the driver.</u>

213 Md. at 254 (emphasis supplied).

It should be carefully noted that that passage does not say negligence is established as a matter of law or that the ownership of the car (the basic fact) is established as a matter

of law. The negligence of the driver and the ownership of the car must still be established by the plaintiff. The passage simply holds that, under the doctrine of <u>respondeat</u> <u>superior</u>, "the negligence (if any) of the driver will be attributable to the owner."

The next possibility by way of response to the burden of production is that the response will be woefully inadequate, as a matter of law, and, therefore, something to be ruled on by the judge.

> <u>If the defendant does present evidence</u> to show that the alleged driver was engaged on business or a purpose of his own, <u>it may be so slight that the Court will rule it is insufficient to be considered by the jury</u> in rebuttal of the presumption, in which case the Court should grant the same instruction it would have granted if the defendant had offered no evidence on the issue.

<u>Id.</u> (emphasis supplied). This, however, is a very rare scenario.

At the other end of the responsive spectrum, the evidence offered by the party against whom the presumption is directed may be so overwhelming and conclusive that the non-existence of the presumed fact is established, as a matter of law, and the jury will not even get to consider the presumption's possible existence.

> <u>The evidence may be so conclusive that it shifts the burden</u> or duty <u>of going forward with the evidence back to the plaintiff, in which event the defendant would be entitled to a directed verdict, if the plaintiff does not produce evidence in reply</u>, unless there is already evidence in the case tending to contradict defendant's evidence.

213 Md. at 254-55 (emphasis supplied). This also is a very rare scenario.

Generally speaking, the evidence offered in response to the burden of production falls

within the center of the familiar bell-shaped curve and creates a classic jury question which

the factfinding jurors may legitimately resolve in either direction.

> The evidence, however, <u>may fall between the two categories mentioned
> above, in which event the issue</u> of agency <u>should be submitted to the jury.</u> It
> would be difficult, if not impossible, to lay down a rule, that would apply in
> all cases, as to when the evidence is so slight that it is insufficient to be
> considered by the jury in rebuttal of the presumption of agency, or so
> conclusive as to require a directed verdict for the defendant. These matters
> must depend upon, and be decided by, the facts developed in each individual
> case.

213 Md. at 255 (emphasis supplied). When the case falls within this middle range, the

beneficiary of the presumption is entitled to have the jury instructed about the existence of

the presumption, although the presumption will have no preclusive effect as a matter of law.

213 Md. at 252-54.

After the 1994 promulgation of the new evidentiary code, the Court of Appeals issued

its opinion in <u>Carrion v. Linzey</u>, 342 Md. 266, 675 A.2d 527 (1996). The Court of Appeals

affirmed that Rule 5-301 rejected both the Thayer-Wigmore theory of the "bursting bubble"

presumption and the Morgan-type theory of a presumption that shifts the burden of ultimate

persuasion.

> In a "bursting bubble" presumption, the jury is never told about the
> presumption.
>
> Alternatively, a Morgan-type presumption shifts the burden of
> persuasion on a given issue. Graham C. Lilly, <u>An Introduction to the Law of
> Evidence</u> 54 (1978) (citing Edmund Morgan, <u>Some Problems of Proof</u> 74–81

(1956)).[5] In a Morgan-type presumption there is no need to inform the jury of the presumption, only of the allocations of the burden of persuasion.

> Instead of either of these approaches, we adopted Md.Rule 5–301.

> [5]The Morgan-type presumption is embodied in the approach adopted by the Unif. R. Evid. 301: "a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence."

342 Md. at 279 (emphasis supplied).

After analogyzing the presumption of correctness under the Health Claims Arbitration Act to Rule 5-301, the Court said with respect to both:

> We shall hold today that the effect of the presumption of correctness found in § 3-2A-06(d) is exactly the effect described by Md. Rule 5-301. ... [T]he burden of persuasion never shifts in a medical malpractice case, and as at common law, the plaintiff must carry this burden.

342 Md. at 287 (emphasis supplied). See also Boyd v. Bowen, 145 Md. App. 635, 652, 806 A.2d 314 (2002) ("Presumptions do not affect the burden of persuasion."); McQuay v. Schertle, 126 Md. App. 556, 590-96, 730 A.2d 714 (1999); Anderson v. Litzenberg, 115 Md. App. 549, 563-64, 694 A.2d 150 (1997).

## Conclusion

The plaintiff has consistently contended that the ostensible presumption of negligence arising from his having been rear-ended by the defendant should have shifted to the defendant the ultimate burden of persuasion on the issue of negligence and that Judge McGann erroneously refused to instruct the jury that the burden of proving non-negligence

was, therefore, allocated to the defendant.  As we have pointed out at some length, Maryland Rule 5-301 and the Maryland Code of Evidence unequivocally state that a presumption in a civil case does not, as the plaintiff contends, shift the burden of ultimate persuasion to the party against whom the presumption is directed.  It remains with the plaintiff.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**